(Decided June 18th, 1895.)

---

FRANK E. DAVIS *vs.* AZEL FORD and Others, a Building Committee.

*Contracts—Abandonment of Work on a Building—Completion of Same at Contractor's Expense.*

Where a party who contracts to erect a building within a certain time fails to do so, and abandons work on the same, not wilfully, but without any valid excuse therefor, and the other party, after notice, proceeds to have the same completed, such party is entitled to recover from the contractor the value of the work and materials necessary to complete the building according to the contract, less any unpaid balance of the contract price.

Where a building contract provided that extra work in excavating the foundation should be estimated and paid for in a certain way, and the builder, after doing extra work, but not according to the provisions of the contract, did not demand payment therefor until more than a year afterwards, and the claim being disputed, was referred

to arbitration, such facts do not justify the contractor in abandoning work on the building, or prevent the other party from completing the same at his expense.

The fact that after a contractor has abandoned work on the building, an agreement is made between him and the owner to go on with the work, which agreement the contractor makes no effort to perform, does not furnish an excuse for the breach of the original contract.

Appeal from the Superior Court of Baltimore City. At the trial the plaintiffs offered the following prayer:

*Plaintiffs' Prayer.*—The plaintiffs pray the Court to instruct the jury, that if they shall believe from the evidence that the plaintiffs and defendant signed the contract offered in evidence, and that the defendant, Davis, commenced the erection of the court-house building mentioned therein and continued to prosecute work thereon until the 7th day of May, 1892, when the defendant's foreman, Layfield, left the said building unfinished and departed from the town of Raleigh, where said court-house was being erected, and that all the other workmen had previously stopped work on said court-house building, and that a copy of the notice or order dated May 4th, 1892, was sent by mail to said Frank E. Davis, defendant, and received by him on the 10th day of May, 1892. And if the jury shall further believe that the defendant did not resume work upon said court-house on or before the 23rd day of May, 1892, and that upon that date the plaintiffs took charge of said unfinished building and employed the witness, Layfield, to employ the necessary labor and purchase the necessary materials to complete said court-house building and to superintend the completion therof, at the same salary previously paid him by the defendant, and that said Layfield did purchase the necessary material and employ the necessary labor therefor, and completed the same, and that said Layfield was a competent and proper person for such employment, and that all said expenses were paid by the plaintiffs or by said county, then the plaintiffs are entitled to recover the value at the town of Raleigh, of the work and materials necessary to the com-

pletion of said court-house building according to the said contract, less any unpaid balance of the contract price, and less the sum awarded by John Anderson for extra masonry, under the arbitration mentioned in the evidence, and also the value of extra excavation in the foundation, and also less the value of any extra materials furnished by or work done by workmen under the charge of said Layfield, and less the price of any materials sold by said Layfield from the materials provided for said building. (Granted.)

And the defendant offered the following prayers:

*Defendant's First Prayer.*—The jury are instructed that the plaintiffs are not entitled to recover, unless the jury shall find from the evidence that the defendant wilfully abandoned his contract and discontinued work thereunder with intent to finally quit the same; and if the jury shall find that in February, 1891, the defendant was instructed to do work and furnish materials upon the court-house not included in the contract and specifications, and that he did do such work and furnish such materials, but was not paid therefor at the time, and that the price therefor was not agreed on, and that subsequently, in April, 1892, he demanded payment therefor and that payment was refused, the plaintiffs declaring that they owed him nothing for such extra work and materials furnished; and if the jury shall further find that subsequently an agreement was entered into between the plaintiffs and defendant to refer the said claim of defendant for such extra work and materials to a certain John Anderson as sole arbitrator, and that said Anderson accepted said appointment, and that before any award was made by him the plaintiffs took possession of the unfinished court-house and employed a certain James T. Layfield to finish the same, and that they never notified the defendant of any award by the said John Anderson, and without notice to him that they had taken possession, went on with said work, notwithstanding notice from the defendant to them not to touch the said work, and that he was ready and willing to go on and finish the said court-house

according to his contract, then the defendant cannot lawfully be treated as having abandoned the said contract so as to authorize the plaintiffs to take possession of the said court-house and complete the same at his expense, and the plaintiffs are not entitled to recover in this action.  (Rejected.)

*Defendant's Second Prayer.*—If the jury shall find from the evidence that in June, 1892, an agreement was entered into between the plaintiffs and defendant that the matter in dispute between them in regard to the defendant's claim for payment for extra work should be referred to arbitration, and that the money payable to the defendant upon the award of the arbitrator, John Anderson, and the balance payable to him under the contract should be retained by them and disbursed by them in payment of the labor on the court-house, and that the defendant should furnish the necessary materials to finish the work; and that in disregard of such agreement the plaintiffs, without notice to the defendant, treated the work as abandoned by the defendant and went on to complete the same themselves, without informing him that on the 23rd of May they had assumed to employ James T. Layfield as their superintendent to complete the work, and that they never notified the defendant of any award by said John Anderson, and that the defendant was waiting for such award and was ready and willing to go on and complete his contract, then the plaintiffs cannot treat the defendant as having abandoned his contract and are not entitled to recover.   (Rejected.)

The Court below (RITCHIE, J.), granted the plaintiffs' prayer and rejected the defendant's prayers.  The jury returned a verdict for the plaintiffs for $4,700, and from the judgment thereon the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and PAGE, JJ.

*John Prentiss Poe*, *Attorney-General*, and *Edgar Allan Poe*, for the appellant.

*James McColgan,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The defendant, who is an architect and builder, agreed with the plaintiffs, who are agents of the County Court of Raleigh County, West Virginia, to supply the materials and labor and build a court-house for the sum of $25,751. This agreement was in writing and under seal, and according to its terms the building was to be completed within sixteen months from its date, that is to say, on or before the 2nd day of January, 1892. The *narr.* alleged that the defendant failed to erect and complete said building according to the terms of the agreement, and abandoned the work; that consequently the plaintiffs were compelled to finish it, and they claim $7,000.

On the 4th May, 1892, an order was passed by said County Court reciting that it having been made to appear to the Court that the defendant was not prosecuting the work as he agreed, it was ordered that notice be given to him to proceed with diligence to complete the building, and that if he failed to proceed with the same in ten days after such notice, then the Court, at its election, would proceed to have the same completed at his expense. A copy of this order was sent to the defendant, and he received it on the 10th of May. On the 7th May the defendant's superintendent in charge of the work closed up his accounts and left Raleigh for Baltimore, leaving the building in an unfinished condition—only two-thirds or three-fourths completed. On the 22nd May the superintendent returned to Raleigh, and was employed by the plaintiffs to finish the building. The defendant testifies that he directed him to return and resume charge of the work as his agent. The defendant failed, however, according to all the testimony, his own included, to furnish either labor or materials after the 7th of May.

The plaintiffs having finished the building after notice to the defendant to resume work, are entitled to recover,

unless the circumstances relied on by the defendant consti-
tute a defence or valid excuse for his abandonment of the
work.   His defence is that not having been paid for certain
extra work he had a right to stop work on the building
until paid; and, secondly, that in June, 1892, after the
alleged abandonment, the plaintiffs agreed that he should
furnish the necessary materials to complete the work.

The contract itself provides that if in excavating for the
foundations it should become necessary to excavate deeper
than shown by the drawings to get a solid foundation for
the walls or any part thereof, that measurements should be
made at the time to ascertain the exact amount of addi-
tional excavation, masonry, labor and materials, which were
to be valued and paid for as an extra at such prices as
should be agreed upon before the work should be done,
otherwise no payment was to be made for such extra work.
On the 24th February, 1891, the plaintiffs informed the
defendant's foreman that they had decided that the founda-
tions should be made twelve inches deeper than provided in
the specifications.   It appears that the extra work was done,
but without any agreement as to price, as provided in the
contract.   And in April, 1892, more than a year after this
extra work was finished, the defendant for the first time
demanded a settlement for it.   In the meantime he had
been paid more than the whole amount he was entitled to
up to the time of completion of the building, which the
testimony shows was only about two-thirds done when
abandoned by the defendant.   Although the plaintiffs deny
that they refused to pay for extra work, it is not surprising
that under the circumstances they may have been unwilling
to pay anything more to the defendant on account of his
work.   The defendant says, that upon the refusal of the
plaintiffs to pay his claim for extra work, he protested
against such injustice and declared to them that if they re-
fused to allow for extra work after ordering it, their contract
was worthless.   And he seems to have acted upon this view,
for very soon thereafter the work appears practically aban-

doned by him.   Early in June the defendant went to Raleigh,
and there entered into a written agreement to refer to arbi-
tration his claim for extra work ; and he testifies, although
contradicted flatly by the plaintiffs, that at the same time he
had an understanding with them that he would furnish all
the materials from Baltimore to finish the work, and that he
was ready to go on and complete the same.   The arbitrator
subsequently ascertained the amount due the defendant to
be $716.25, and this was allowed him as a credit against
the plaintiff's claim.

It is admitted that the instruction given at the instance of
the plaintiff is in itself unobjectionable.   But it is contended
that the prayers offered by the defendant should also have
been granted in connection with that of the plaintiff.   But
we do not agree to this view.   The defendant's first prayer
contains this proposition, that the plaintiffs are not entitled
to recover unless the jury shall find that the defendant wil-
fully abandoned his contract and discontinued work there-
under, with intent finally to quit the same.   The question
here, however, is not whether the abandonment was wilful,
but whether it was under such circumstances as afford the
defendant a legal excuse for the violation of his contract.
*Gill & McMahon* v. *Vogler*, 52 Md. 665.   The abandon-
ment may have been free from wilfulness, and yet, if the
circumstances on which the defendant relies for a justifica-
tion do not constitute a legal excuse, the plaintiff should
recover.   The remaining proposition contained in this prayer,
as we understand it, is that if the plaintiffs and defendant
agreed to refer to arbitration the claim for extra work, the
plaintiff had no legal right, notwithstanding all the other
facts in the case, to take possession of and complete the
work at defendant's expense.   The matter, however, referred
to arbitration was entirely distinct from the main contract,
according to the terms of which the very claim to be arbi-
trated had no foundation whatever.   The defendant certainly
should not be excused from performing his part of the

·original and subsisting contract because of a difference between him and the plaintiffs as to a matter extrinsic and foreign to it.

. The second prayer of the defendant is based upon his own testimony to the effect that in June, 1892, there was an understanding between him and the plaintiffs that whatever the amount found due him by arbitration should. be added to the balance due on the contract price, and the whole amount should be disbursed by the plaintiffs in payment of labor, and that he would furnish all the materials from Baltimore for the completion of the building, and that he was ready to go on and complete the work. Upon this evidence the defendant asked the Court to instruct the jury that if they found such understanding was had between the parties, that the defendant was justified in abandoning the work, and that the plaintiff had no legal right to take charge of the work before the award of the arbitrator was filed. But we think it clear such an instruction is not warranted by the facts of this case. ᐧ For even if it be conceded, as it is in considering this prayer, that such an understanding was had, yet it must be remembered that all the testimony shows that the defendant never took any steps to comply with his part of the understanding. He never furnished or offered any materials for the work from the time he gave up the work to the time of trial of this case. All he did after the 7th of May was to send an agent to Raleigh without furnishing him with any means whatever of prosecuting the work. The existence of the alleged contract made in June, can afford the defendant no excuse for failure to perform the original contract, if he was not in fact able and never made any *bona fide* effort to perform his part of the June contract. Undoubtedly, if in June the parties made the contract in question, and it was agreed it was to take the place of or be a modification of the first contract, a different case would have been presented. But there is no such case before us. We think the facts were fairly put to

the jury in the instruction given by the Court, and finding no error the judgment will be affirmed.

*Judgment affirmed with costs to plaintiffs.*

(Decided June 18th, 1895.)