## CHAMPLAIN CONST. CO. v. O'BRIEN et al.

(Circuit Court, D. Vermont. November 19, 1900.)

1. REMOVAL OF CAUSES—TIME FOR FILING PETITION—EFFECT OF FILING ANSWER BEFORE TIME REQUIRED.

The filing of an answer in a state court before the time required, for the purpose of enabling the defendant, under the rules of the court, to move for the dissolution of a preliminary injunction, does not affect his right to file a petition for removal within the time allowed by the state laws or rules of court for answering.

2. SAME—PROCEDURE AFTER REMOVAL—MOTION TO DISSOLVE INJUNCTION.

Under the provision of the removal statute (18 Stat. 470) which continues in force any injunction granted before removal until dissolved by the court to which the suit shall be removed, when a cause has been entered in a circuit court after its removal a motion to dissolve a preliminary injunction granted by the state court, and then in force, may be made at once.

3. PRELIMINARY INJUNCTION—HEARING ON MOTION TO DISSOLVE—AFFIDAVITS.

Where a preliminary injunction has been granted against an apprehended waste or destruction of property, ex parte affidavits in support of the bill and against the denials of the answer, setting out copies of notices the legal effect of which is in dispute, may be used on the hearing of a motion to dissolve the injunction.

4. CONTRACTS—RAILROAD CONSTRUCTION—NOTICE OF FORFEITURE.

Where a contract for railroad construction authorized the company, if at any time, in the opinion of its chief engineer, the contractors were not complying with their contract, to serve notice on the contractors, and take possession of the work, together with the tools and materials of the contractors, and to complete the work at their expense, and hold their property as security for any damages sustained by reason of their default, such a notice, to entitle the company to take possession of the contractors' property, must set out the opinion of its chief engineer as an essential condition precedent; but the company would have the right to take possession of its own property without such notice, and to proceed with the work as it saw fit, taking the risk of the legal consequences of its action.

5. LIENS—INSUFFICIENCY OF CONTRACT—EFFECT OF OBTAINING POSSESSION.

Where a contract between a railroad company and contractors for work on its line gave the company a lien on the property of the contractors used in the work for advances and general balances, although the contract was not so executed as to create a valid mortgage, it will be held valid as a pledge after the company has taken possession of the property, but it will not authorize the company to use the property in the prosecution of the work.

In Equity. On motions by defendants to dissolve a preliminary injunction, and by complainant to remand to state court.

F. H. & W. H. Button, for plaintiff.

T. W. Moloney and F. M. Butler, for defendants.

WHEELER, District Judge. The plaintiff is building the Rutland-Canadian Railroad, and the defendants are contractors for doing the work, under a written contract, with specifications by which it was to be done by October 1, 1899. The contract provides:

"Third. It is further agreed that if at any time the progress of the work or the character of appliances and materials furnished is not such as, in the opinion of the company's chief engineer, will secure the completion of this contract within the time stipulated herein, or is not in accordance with the said specifications, then the company may serve written notice upon the contractors personally, or by leaving the same at their office, No. 233 Broadway in the city of New York, the contractors shall fail to furnish the company sat-

isfactory evidence of their efforts, ability, and intentions to increase said progress or improve said materials, the company, if it so elect, may thereupon enter and take possession of the said work, or any part thereof, with the tools, materials, plant, and appurtenances thereon, and hold the same as security for any or all damages that may arise from the nonfulfillment of this contract within the time herein stipulated; and the company may use and employ said tools and other appurtenances and other proper means to complete the work at the expense of the contractors, and may deduct the cost thereof from any payment then due or that thereafter may become due to the contractors."

The time for completing the work was, from time to time, extended to May 20, 1900, and the last contract of extension provided:

"Fourth. All rights of said company to take over the plant and other appliances of said contractors and complete the work provided in said contract shall be continued on the same conditions as contained herein for said time of extension, and for all time thereafter up to the final completion of said work, and no rights secured to the said company by the terms of said contract shall be in any manner waived by any of the provisions thereof."

June 1, 1900, the company, by letter of its president to the defendants, specified several points where the number of men employed and the work and materials were not satisfactory, and June 14th inclosed to them a report of the chief engineer of the Rutland Railroad upon the state of the work, and said:

"I would call your attention to the clause in the contract and in the various supplemental contracts which provides that this shall be of the essence of the contract, and also for liquidated damages to the amount of $400 per day. The loss to our companies in not having this road to operate in connection with the Rutland system will, in my judgment, exceed this amount, and this company will insist upon all its rights in regard to damages under its contract, and will hold you for the amount of damages therein specified."

July 20th the parties agreed, in writing that, for an advance of $49,000, the plaintiff should "have a lien upon all of the plant, appliances, and supplies of the party of the second part now engaged in or upon constructing said railroad, or which may hereafter be used in or upon the construction of said road, as security for any balance that may be due from said parties of the second part to said party of the first part on account of the constructing of said railroad under said contract and supplemental contracts on the final accounting between said parties"; and on September 19th they further contracted that:

"In consideration of the advance by said party of the first part of a sum sufficient to discharge said wages, it is mutually agreed between the parties hereto that said party of the first part shall have a lien upon all the plant, appliances, and supplies of said parties of the second part now employed in or upon the construction of said railroad, or which may hereafter be employed in or upon the construction of said railroad, as security for any and all sums which have been advanced or which may hereafter be advanced to said parties of the second part for work under said contract and supplemental contracts, and for whatever balance may be due from said parties of the second part to said party of the first part on a final settlement for all work under said contracts and in constructing said railroad. It is further agreed that the advance of said sum shall in no wise prejudice or alter any rights which said party of the first part now has under said contract and supplemental contracts to take over said plant, appliances, and supplies, and complete said railroad, or to deduct its damages for noncompletion of same or any other rights which it may have under said contract or supplemental contracts."

—And thereupon $64,000 was advanced.

October 1st the president wrote again:

"I was over that part of the road between Burlington and Mooney cut on Saturday, and am very much disappointed at the progress of the work. There are not enough men on the line to finish the ballasting before winter, and the men who are working are not effective. I am surprised to see how little has been done in the last two weeks. You will remember that I have told you I would increase the price which we are to pay you for some parts of the work, provided you would increase your force 500 men by Saturday night last. Instead of an increase of 500, there is an actual decrease, so, of course, I do not expect to pay you any increase, inasmuch as you have not complied with the very first condition precedent thereto, namely, to increase your force 500 men. Conditions on the Mooney cut and Pearl cut are still very bad, and the work is progressing very slowly. At the rate you are going now, I do not expect to see the road open for traffic this winter."

On October 11th this suit was brought in the state court of chancery, returnable to the March term, setting out defaults, and liens, and notice for taking possession and taking over the work, materials, and plant under the contracts, and refusals, and praying for an injunction against further refusal, interference with taking possession and operations; and a preliminary injunction was granted therein restraining the defendants "from in any way interfering with the orator in the above-entitled cause, and from in any way preventing said orator in taking over and using the plant and other property mentioned in said bill now upon the work along the line of the Rutland-Canadian Railroad, or in any manner connected with said work, whether upon said line or elsewhere, including all steam and other boats, steam shovels, locomotives and stationary engines, cars, derricks, hoists, pipes, drills, pile drivers, pumps, dredges, chains, cables, coal, powder, and all other tools, appliances, and supplies of every kind and description, and from prosecuting and completing the work on said railroad, and from in any way interfering with the said plant or other property and with the men now employed on said work, and by threats, inducements, or other promises preventing said orator in securing their services for the completion of said work." The rules in chancery of the state court provide that a motion to dissolve an injunction will not be heard till after an answer is filed. Pursuant to this rule, the defendants answered, denying any notice to take over the work and plant under the contract, alleging that delays and defaults were due to the plaintiff, and setting up that there was due to the defendants under the contract much more than the amount of the two liens, and moved to dissolve the injunction. The motion was heard in part, and continued for further hearing. Then the defendants removed the cause to this court, and have moved here for a dissolution of the injunction. The plaintiff has moved to remand because the defendants have answered in compliance with the rule of the state court, and denies the right to move to dissolve in this court before the first day of the next session.

By the act of 1888 the defendant may file a petition for removal in the state court "at the time or any time before the defendant is required by the laws of the state or the rule of the state court to answer or plead." 25 Stat. 433. These defendants were not "required" to answer in the state court till the March term. They could answer

before that, in order to move to dissolve the injunction, but this was at their option. They lose the right only by going beyond the absolutely required time. Leave to delay, by rules of practice, beyond that time, does not save the right. Deciding to answer in compliance with a rule of practice for a preliminary purpose would not cut it off. The preliminary injunction and the proceedings in respect to it stood by themselves, apart from the subpoena and the requirement to appear and answer. A new answer may be filed, as of right, within the time for answering generally, and this voluntary answer as a part of those preliminary proceedings is not what is required by the removal statute. The statutes provide:

"That when a suit shall be removed to a circuit court of the United States, * * * all injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed." 18 Stat. 470.

Under this statute, when the case is actually entered in the circuit court, a motion to dissolve a preliminary injunction seems to be in order. Hamilton v. Fowler (C. C.) 83 Fed. 321.

Question has been made as to the admissibility of ex parte affidavits in support of the bill against the denials of the answer. That generally they are not so admissible is recognized, and that there are exceptions in cases of waste and of patents is well known. High, Inj. 1007, 1008. This is a case of apprehended destruction of property and of conflict, and seems to well fall within the exception. The exact terms of the notices upon which the possession of the roadway and of the plant and materials were taken are shown by copies of the letters quoted from belonging to an affidavit in support of the bill, and they qualify the denials of notice in the answer according to their extent. The right to take over the defendants' property, and to use it, in proceeding with the work, at their expense, rests upon the opinion of the chief engineer of the plaintiff, and the notice required by the contract should set that forth as a part of an intended proceeding for that purpose, so that the defendants might understand the object and comply with the requirements of the notice. These communications contain no reference to any opinion of that chief engineer, and do not point to any taking over of the property for want of compliance. The exclusion of a person from his property under such proceedings is so contrary to common right that the provisions for them should be strictly followed; and these do not appear to have been so followed, nor to have afforded sufficient ground for taking it over. But the roadway upon which the work was being and to be done belonged to the plaintiff, and not to the defendants; and the plaintiff would not have to await the convenience or necessities of the contractors, but would have the right, without notice, but with the risk of legal consequences, to take possession of its own property peaceably, and proceed with the work as it should see fit. Danforth v. Walker, 37 Vt. 239. Such possession appears to have been taken under the protection of the injunction. The defendants have not disavowed any intention to resume possession of the roadway if the injunction should be dissolved, and to this extent, for the protection of this possession, the injunction should, for the

present, stand, with the legal consequences of the taking of this possession and of its protection by the injunction left to be determined.

These views would lead to a dissolution of the injunction as to the defendants' plant and property but for the liens given for security of advances and general balances. They are not executed according to the law of personal property mortgages, and perhaps would not hold the property without possession; but with the possession that the plaintiff has they amount to a pledge for security according to their terms. The general balance of the whole may turn out to be in favor of the defendants, and, if so, they will be entitled to this property of course; but this cannot be assumed to be so, nor properly be found to be so at this stage of the case and proceedings. The plaintiff is, therefore, entitled to hold possession of the property for the present for the purpose of the security. But a pledgee has no right as such to use the pledge, and the plaintiff does not appear to have any right to the possession of this property for use. The injunction should, therefore, by strict legal right, be dissolved as to this personal property, except as to custody of it for the security. Apparently, however, the use of the property in the completion of the work, to be accounted for by the plaintiff, will be for the best interest of all. Such use and accountability appears to be made safe to the defendants by the injunction bond, and the propriety of it is confirmed by the provision for it in the contract if the work should be taken over on notice. Motion overruled as to roadway and work, and also as to defendants' plant and property, but with accountability of plaintiff to defendants for the use of these latter, without prejudice to other rights of parties.