# HENRY SMITH & SONS *vs.* GEORGE JEWELL ET AL.

*Building Contract—Stipulation Requiring Certificate of Architect as to Failure of Performance.*

A provision in a building contract that the amount of damages to be recovered in case the owner terminates the contract on account of a failure to perform by the builder shall be certified by the architect whose decision shall be binding on both parties, is to be strictly construed, and the certificate of the architect is not a condition of the right of action, when the builder repudiates the contract and the owner sues to recover damages therefor.

The defendant J agreed with the plaintiff to lay all the bricks necessary in the construction of a building for a certain sum, and gave a bond with the other defendant as surety for the faithful performance of the contract. After doing a part of the work, J willfully and without legal excuse abandoned the contract, and the plaintiff after notice to both defendants employed another person to finish the work, at a cost in excess of that named in the contract, and sued to recover such damages. The contract provided that if J should at any time neglect to supply a sufficiency of labor to prosecute the work with diligence, or fail in the performance of any of his agreements, such failure being certified to by the architect, the plaintiff should be at liberty to provide such labor and deduct the cost thereof from any payments due to J under the contract. And also that if the architect shall certify that such neglect or failure is sufficient ground for the action, the plaintiff should be at liberty to terminate the employment of J and employ other persons to finish the work, and that if the expenses incurred by plaintiff in finishing the work, should exceed any unpaid balance due to J, then J should pay the difference to the plaintiff; also that such expenses shall be audited and certified to by the architect, whose certificate thereof shall be conclusive upon the parties. *Held*, that these provisions relating to the certificate of the architect, do not apply in this case, where the plaintiff did not terminate the contract, but where the defendant J wholly abandoned the work, and the plaintiff is entitled to recover without a certificate of the architect as to the cost of finishing the work.

*Decided November 15th, 1906.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*George R. Gaither* and *Leon E. Greenbaum*, for the appellants.

The work under the contract having been abandoned by the defendant, Jewell, on May 6th, 1903, the plaintiffs had the right to proceed to complete the said contract and to recover any balance due in excess of the contract price from the defendant and his surety.

There is not the slightest evidence that this abandonment of the contract was in any way caused by the plaintiffs, or that they in any way interfered with his work upon the contract, or requested him to stop work; on the contrary, they notified him of their intention to proceed several days after his abandonment of the work, and yet, during that period, he never made the slightest attempt to do any work whatsoever.

The contingency provided for in this agreement, giving the right to the plaintiffs to supersede Jewell in his work and oust him from his contract, even though he was undertaking to comply with the same, is a very arbitrary one, and it is easy to see why the additional requirements should have been inserted, that under such circumstances, such expenses should be audited and certified to by the architects or superintendent. It is submitted that such a case is an entirely different one from the one arising from the facts in this case where the breach of the contract arises from the abandonment of the work by the plaintiffs and not from any certificate or action of the architects, or even of the plaintiffs themselves.

Moreover, the rule of construction applicable to all contracts where the effect of one construction would be to oust the jurisdiction of the Court, and the other to retain the cause, is to make every construction in favor of the theory of granting relief to the parties rather than one which will deny them their remedy in Court. *Gibbons* v. *Lautenschlager*, 74 Fed. Rep. 160; *Fontano* v. *Robbins*, 18 D. C. Appeals, 414.

Applying this universal rule of construction, that the juris-

diction of the Courts shall not be ousted by the construction of the terms of a contract, unless such construction must necessarily be implied from its terms, it would seem clear that to make the last clause of this paragraph of the contract refer to *any breach* of the preceding sections of the same, regardless of the fact as to whether said breaches arose from the willful abandonment by the defendant of his contract, or from the act of some third party, is to give a forced importance to this section, and one which is not necessarily to be implied from its terms.  The case of *George A. Fuller Co.* v. *Doyle* and the *American Bonding Co.*, 87 Fed. Rep. 687, is identical with the case at bar.  See also *Dobbling* v. *Ry. Co.*, 203 Pa. St. 628.

It is, therefore, submitted, that the clause requiring such expenses as are incurred, in the event of the discontinuance of the employment of the defendant, Jewell, by the certificate of the architect, to be audited and certified by the same architect or his superintendent, can have no application to a right of action for breach of the agreement arising from the abandonment of the work by the defendant, Jewell;  and that the plaintiffs are clearly entitled to prove by the evidence offered by them the extent of the damages which they have sustained from this breach of the contract.

Assuming, for the sake of the argument, that this last clause regarding expenses applies to any breach of the contract, yet it does not prevent the rights of the plaintiffs to recover, *because such certificate is not made by the express terms of the contract, a condition precedent for any payment of losses.*  By the express language of the clauses the certificate is only made "conclusive upon the parties;" it is not made a condition precedent to any payment.  It may be one of the methods devised for the ascertainment of liability, and it could be invoked by either of the parties to this action, but it is not made in express terms or by necessary implication, the sole basis of any cause of action under the contract.  *Hamilton* v. *Home Ins. Co.*, 137 U. S. 370.

*J. Kemp Bartlett* and *Edgar Allan Poe* (with whom was *John P. Poe* on the brief), for the appellees.

The question presented by the appellant's first bill of exceptions may be stated thus: Is a provision in a building contract to the effect that in the event of default the expenses of completion of the work shall be audited and certified to by the architect or his superintendent, whose certificate thereof shall be conclusive upon the parties—binding upon the parties?

If such a provision is binding will either of the parties to such a contract, in the absence of proof of fraud or collusion on the part of the architects or superintendent be permitted to substitute in place of proof of such audit and certificate, some other proof of such expenses?

Such a provision in building contracts as is found in the contract in this case is by no means unusual. Such protection to the party who is to perform the work against being held responsible for a wasteful expenditure of the contract price, in the event of differences arising between him and his employer, which, as in this case, lead to a stoppage of the work, is quite as prudent and reasonable as the familiar clause in such contracts which protects the employer by providing that no payment shall become due until the architect has certified it to be due.

Under the contract in evidence, Jewell, the sub-contractor, agreed to do certain work for the general contractors according to certain specifications. The surety guaranteed the faithful performance of this contract. Architects were named in the contract whose satisfaction with and approval of the work was a condition precedent to payment being made therefor, and the sub-contractor had to present their certificate before receiving his final payment. In case the sub-contractor failed to finish the work, the general contractors might take over the job by complying with certain provisions. But, if they did, they were obliged to complete the work in accordance with the specifications, and, before they could collect from the sub-contractor what it cost beyond the contract price, they had to

have the certificate of the architects showing the expense and damage incurred.   In each case, the certificate of the architect was a condition precedent as to the right to recover either the contract price, or the additional expense incurred in finishing the work.   The first certificate was, peculiarly, for the benefit of the general contractors, but the second was more particularly for the benefit of the sub-contractor and his surety.   If a certificate was required to guard the rights of the general contractors, when the work was being done by the sub-contractor, a certificate was also required to protect the rights of the sub-contractor and his surety, when the work was done by the general contractors.   The reason for requiring one certificate is the ground for demanding the other. The damages sought to be recovered are not damages outside the contract, but damages under the contract resulting from an alleged violation of its provisions.  The surety is also sued. Now, the surety guaranted the faithful performance of the contract, and the measure of the damages for which it can be held responsible must be found in the contract itself.  If there be in the contract a provision for ascertaining the amount of damages incurred through a violation of any of its provisions, the surety has a right to insist, and so has the principal, on its observance before being held responsible.   The general contractors—the appellants—had a right to insist on a certificate from the architects before making the final payment to Jewell, had he completed the work, and, under the contract, Jewell and the surety—the appellees—had a right to insist on a certificate from the architects before paying for work done by the appellants after they took over the job, even admitting that they took it over in accordance with the provisions of the contract.

The following cases support the contention of the appellees, and no cases have been found that in any way question or qualify the sound doctrine that requires a man to establish his right of action, if any he has, by that standard, and by that only, which he has agreed shall constitute conclusive evidence, either for or against him, of its existence : *DeMattos* v. *Jordan,*

15 Wash. 378; s. c., 20 Wash. 315; *American Bonding & Trust Co.* v. *Gibson County*, 127 Fed. Rep. 671; *International Cement Co.* v. *Bielfeld*, 173 Ill. 179; *Talley* v. *Parsons*, 131 Cal. 516; *Scott* v. *Texas Const. Co.*, 55 S. W. 37; *N. Y. Building & Improvement Co.* v. *Springfield E. & P. Co.*, 56 N. Y. App. Div. 294.

PEARCE, J., delivered the opinion of the Court.

On October 16th, 1902, the plaintiffs who were the successful bidders for the erection of the State House Annex at Annapolis, entered into a written agreement with one of the defendants, George Jewell, to haul all the material needed for the erection of said annex, and to lay all the bricks used therein for certain payments, and at certain prices set forth in said agreement, and by the terms of said agreement the said Jewell was to furnish, within ten days after its execution, to the plaintiffs, a corporate bond in the penalty of four thousand dollars, conditioned for the faithful performance of his agreement. On October 21st, 1902, the required bond was executed by Jewell, and by his co-defendant in this suit, The United States Fidelity and Guaranty Company, and was delivered to the plaintiffs, and thereupon in due course, the said Jewell began the performance of said contract, and continued therein until May 6th, 1903, when he ceased to supply any bricklayers for the prosecution of said work, and never afterwards did, or attempted to do any work under said contract. This action on his part grew out of the fact that on May 6th, 1903, the plaintiffs notified Jewell that as they had then paid him more money than the contract called for at that time, he should look elsewhere for his pay roll, but as he did not provide for it, the men stopped work that night. On the following Tuesday, however, the plaintiffs paid the men up to May 6th, but they still refused to resume work until paid for waiting time. Thereupon, on May 11th, the plaintiffs sent a written notice to Jewell that as he had refused to furnish the necessary labor to prosecute the work, and had notified plaintiffs of his intention to abandon the same, that they should proceed on Friday,

May 15th, at 8 A. M., to provide the necessary labor there-for, and that the cost of the same would be deducted from any money that should become due him.   To this notice no reply was ever received.   On May 12th, 1903, the plaintiffs sent to the United States Fidelity and Guaranty Company a copy of the above notice to Jewell, and informed said com-pany that as Jewell had failed to comply with his said contract, they should proceed to complete said work at his expense, holding said company as surety on said bond; and on May 13th, 1903, a second written notice was sent said company by the plaintiffs, stating that Jewell had abandoned the work, and that plaintiffs should hold said company financially responsible for any losses, delays or other expenses connected with his failure to abide by the terms of said contract.   Receiving no reply, and nothing being done towards resuming said work, the plaintiffs then made a new agreement for the performance of said work, with Wm. E. Feldmeyer, by whom the same was fully performed at the expense of the plaintiffs, and upon the completion of said work, so performed, at reasonable and proper prices, the cost thereof, after deducting the amount due for completing the same under the terms of the agree-ment with Jewell, exceeded, by the sum of $4,189.93, the sum which would have been due said Jewell for the same work under said contract, and this suit was brought on said bond to recover the penalty thereof, it being less than the cost of completing said work.   The declaration was in the usual form, setting out the condition of the bond, and its breach by Jewell in not hauling the materials and laying the brick as required by the bond.

The defendants pleaded that the bond was given as a secu-rity for the faithful performance of the contract of October 16th, 1902; that by said contract it was a condition precedent to the continuance by Jewell in the performance of the work thereunder, that certain specified payments should be made said Jewell by the plaintiffs at certain designated times, which payments the plaintiffs failed and refused to make as required by said contract, and that Jewell had not refused or failed to

keep and perform said contract, and did not commit any breach of said bond. The plaintiffs replied that they did make all payments as they became due and payable under said contract, and that said Jewell did commit the breaches of his obligation as set forth in the declaration. Issue was joined on this replication, and a verdict was rendered in favor of plaintiffs for $5, and from the judgment entered on this verdict, the plaintiffs have appealed.

The whole case, and all the exceptions, turn upon the construction of the following clause in the agreement of October 16th, 1902:

"And it is further agreed that should the said George Jewell at any time refuse or neglect to supply a sufficiency of properly skilled workmen to prosecute said work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified to by the architects, the said Henry Smith and Sons shall be at liberty, after three days written notice to the said George Jewell, to provide any such labor, and deduct the cost thereof from any money then due, or that may thereafter become due to the said George Jewell under this contract. And if the architects shall certify that such refusal, neglect or failure, is sufficient ground for such action, the said Henry Smith & Sons shall be at liberty to terminate the employment of the said George Jewell on said work, and to enter upon the premises, and to take possession for the purpose of completing said work under this contract, and to employ any other person or persons to finish the work. And in case of the discontinuance of the employment of the said George Jewell, he shall not be entitled to any further payments under this contract until the work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expenses incurred by the said Henry Smith & Sons in finishing the work, such excess shall be paid to the said George Jewell; but if the expenses shall exceed such unpaid balance, the said George Jewell shall pay the difference to the said Henry Smith & Sons. *Such expenses shall be au-*

*dited and certified* to by the architects or superintendent, whose certificate thereof shall be conclusive upon the parties."

The proof that Jewell abandoned the work deliberately, and without any valid excuse therefor, is positive and full, and due notice having been given by the plaintiffs of their purpose to complete the work at his risk, they are entitled to recover the difference between the reasonable cost of completion, and the balance of the contract price unpaid, unless there is something in the agreement in this case which forbids such recovery. *Davis* v. *Ford*, 81 Md. 333. For the purpose of proving the cost of completing the work, the plaintiffs offered in evidence the receipts from Feldmeyer for payments made him by them for work done, and also to show by one of the plaintiffs that these payments were made, to which offer the defendants objected, unless the plaintiffs undertook to follow this with the certificate of the architects or superintendent that such expenses had been audited and certified by the architects or superintendent, and the plaintiff refusing to do so, the Court sustained the objection and refused to admit the proffered testimony.

This constitutes the first exception.

The plaintiffs then offered to prove by one of them that they had no control of, or authority over the architects of the annex, when the agreement of October 16th, 1902, was made, nor subsequently, and that said architects were not their agents or employees, to which the defendants objected, and the Court sustained the objection. This constitutes the second exception.

The plaintiffs then offered to prove by competent witnesses, the making of the contract with Feldmeyer to complete the work abandoned by Jewell, after due notice according to the agreement with Jewell, the completion of the work by Feldmeyer; the payment to him of the actual cost of labor and material, with a commission of $7\frac{1}{2}$ per cent for use of tools and supervision according to the terms of the agreement with him; that all these payments were reasonable and proper amounts for work and material furnished, and for supervision;

and that the amount of such payments after deducting the amount due and unpaid for completing the work under Jewell's contract, amounted to $4,182.93 in excess of what would have been due Jewell for the same work, and exclusive of $700 paid Jewell's men at the time he abandoned his contract, but the plaintiffs declined to furnish evidence that the amounts paid Feldmeyer were ever audited or certified by the architects named in their contract with the State, to which the defendants also objected, and the Court sustained the objection, and refused the offer of proof.

This constitutes the third exception.

At the close of the plaintiff's case, the defendants, without offering any evidence offered two prayers: 1st. That there was no evidence legally sufficient under the pleadings to entitle the plaintiffs to recover.   2nd. That there was no evidence legally sufficient under the pleadings, to show the plaintiffs had sustained any actual damage by reason of the alleged abandonment of the work by Jewell, and that the recovery could only be for nominal damages.

The Court refused these prayers, but granted the following instruction of its own in lieu of those offered:

"The jury are instructed that the plaintiffs have offered no evidence legally sufficient under the pleadings, to show the amount of the damages, if any, sustained by them by reason of the alleged abandonment by the defendant, Jewell, of the written contract between him and the plaintiffs, dated October 16th, 1902, offered in evidence, and that therefore the verdict of the jury must be for nominal damages only." The principal, and a controlling question, therefore, if decided in favor of the plaintiffs, is whether the clause in question has any application to a right of action for breach of the agreement arising from the abandonment of the work by Jewell.

No case in this Court has been cited in which that question has been decided, but it is well settled that wherever one construction will sustain, and another will oust the jurisdiction of the Courts, the former will be adopted if it can be done consistently with the language of the agreement.

In *Lauman* v. *Young*, 31 Pa. St. 306, in deciding a very similar case, the Court said, "The right of trial by jury will not be taken away by implication merely, in any case. It must appear in all cases that the parties have agreed to dispense with it;" and it is equally true that the right of the jury, in any case submitted to them, to hear and weigh the evidence admissible under the rules of law, and under proper instructions from the Court, cannot be *restricted* by implication, merely, and that any restriction contended for, must clearly appear to have been imposed by the agreement of the parties.

In *Fontano* v. *Robbins*, 18 Appeal Cases, Dist. of Columbia, 417, the Court said, "Special stipulations submitting the demands of a contractor to the adjudication of supervising architects and engineers, though enforceable, are in derogation of common right and the ordinary freedom of action, and must clearly appear to be within the intention of the contract. Construction, in case of doubt, is in favor of one resisting enforcement."

And in *Gubbins* v. *Lautenschlager*, 74 Fed. Rep. 167, the Court said: "Citation of authority is unnecessary for the legal proposition that contracts are not literally construed for the purpose of finding therein provisions debarring parties from access to the Courts for settlement of controversies."

With these principles in view, let us examine the paragraph of the agreement in this case which gives rise to the controversy.

An analysis of this paragraph will show that it is divisible into two clauses, providing for two distinct methods of procedure *in case of the contractor's failure to prosecute the work in the manner prescribed by the contract*, but making no provision for his abandonment of the contract.

The first clause provides that in event of his failure to supply a sufficiency of properly skilled workmen to prosecute said work with promptness and diligence, or in the performance of any of the agreements contained in said contract, such refusal, neglect, or failure, being certified to by the architects, the plaintiffs should be at liberty, after three days written no-

.tice to the contractor to provide any such labor and to deduct the cost thereof from any money then due, or thereafter to become due to said contractor. In such case, nothing else appearing, the contractor would be at liberty to proceed with the work, in the manner he deemed a compliance with his contract, while the plaintiff could supply the deficiency in skilled workmen, or perform the labor totally neglected by the contractor, at the expense of the contractor. The second clause provides that if the architect shall certify that such refusal, neglect or failure, is sufficient ground for such action, the *plaintiffs* shall be at liberty to terminate the whole employment of the contractor, and complete all the work either themselves, or by the employment of any other person for that purpose. And that in case of the discontinuance of the contractor's employment by the plaintiffs, that he should be entitled to no further payments until the work was completed, when, if the unpaid balance under the contract should exceed the expenses incurred by plaintiffs in finishing the work, such excess should be paid him; but if such expenses should exceed such unpaid balance, the contractor should pay the difference to the plaintiffs. The paragraph then concludes. "*Such* expenses shall be audited and certified to by the architects or superintendent, whose certificate shall be conclusive between the parties." The expenses thus required to be audited and certified, are those, and *those only*, incurred under the two methods of procedure above stated. The plaintiffs took neither of these methods. The contractor however took a course, which however satisfactory to him was not provided for by the agreement of the parties. He abandoned his contract altogether, of his own volition, and in doing so, he remitted both the plaintiffs and himself to the ordinary methods of procedure, and to the ordinary rules of evidence in actions for the breach of contract. This we think is the plain and reasonable interpretation of the paragraph in question. The first clause provides for only a partial failure of performance by the contractor, not regarded by the architects as sufficient ground for discontinuing or terminating his employment. The second

clause provides for such discontinuance or termination of employment, and it is obvious that *such discontinuance* for the purpose of bringing the parties within the terms of this clause, could only be worked by the act of the plaintiff. The remedy provided by this second clause is a summary and arbitrary remedy, and when exercised, it is only reasonable and just that some means of protection against unreasonable changes, should be provided for a contractor displaced against his will. But when, of his own volition, he abandons his contract, and forces upon the other party the necessity either of personally completing the work, or securing another contractor, the original contractor has no claim to such consideration.

We should be prepared to adopt the construction above given, as sound in principle, if there were no authority in its support, and we have found no decisions in this State upon the question, but there is ample and satisfactory authority for it elsewhere. In *Lauman* v. *Young, supra,* there was a contract for the construction of a section of a railroad, which contract provided that the quantity of work to be done, and the amount of compensation at prescribed rates, should be determined by the engineer "who should decide all disputes arising under the contract," and that his decision should be final. The Court said: "In order to oust the jurisdiction of the Courts, it must clearly appear that the subject-matter of the controversy is within the prospective submission," and the submission was held not to embrace a claim for damages for refusing to permit the contractor to proceed with the execution of the work. In explaining the reasons for this conclusion, the Court said: "The words, 'all disputes,' are clearly controlled by and limited to the distinctly enumerated grounds of anticipated dispute in the same sentence, which are so defined that these general words have no force or meaning, unless they relate to anticipated disputes arising out of the work to be done, and the compensation to be paid. The engineer was to decide every question that could arise as to the *execution* of the contract by the contractor. Why particularize if the matter is to be controlled by a general provision? The engineer had no

jurisdiction if there was no execution of the contract by the plaintiff." In *Dobbling* v. *York Springs R. R.*, 203 Pa. St. 628, it was held that an arbitration clause in a contract for the construction of a railroad, which makes the decision of the engineer final "as to any dispute relative to, or touching the agreement," and which waives the right to sue at law, otherwise, does not apply where no claim is made for work done *under the agreement*, and the contract itself has been rescinded, and the contractor is claiming to recover for the loss of the contract. In that case the contractor was prevented by the defendant from beginning the work because of difficulties which arose concerning the right of way. The Court said, "the agreement clearly could not include a claim for damages for abrogation of the contract."

In *McGovern* v. *Bockins*, 10 Phil. 438, cited in *Dobbling* v. *York Springs R. R.*, *supra*, where there was a similar contract, the Court said: "We cannot conceive that the language of this agreement contemplates that the estimate of the engineer should be given on the rescission of the contract.' It would not be a natural construction of it. It was never intended that the engineer should usurp the province of the jury, and upon the rescission of the contract, determine the contractor's damage for the loss of his contract."

In *Fuller & Co.* v. *Doyle* and the *American Bonding Company*, 87 Fed. Rep. 687 (Eastern District of Missouri), the language of the contract was almost identical with that before the Court, there being no material difference. It provides that if the contractor should fail to supply a sufficiency of properly skilled workmen, or materials of proper quality, or to prosecute the work with due diligence, the owner might upon securing a certificate from the architect to the fact of such failure, and upon three days notice to the contractor, enter upon the premises and complete the work; and it was held that such a provision contemplates a case where the contractor claims to be complying with his obligation, and not a case where the contractor absolutely abandons the work, and voluntarily surrenders the premises to the owner for its completion.

It is quite clear, as was said in *Hamilton* v. *Liverpool & London Ins. Co.*, 136 U. S. 242, that "Where the parties, in their contract, fix on a certain mode in which the amount to be paid shall be ascertained, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so." But in the later case of *Hamilton* v. *Home Ins. Co. of N. Y.*, 137 U. S. 370, the same Judge, JUSTICE GRAY, discriminated the former case from one in which the particular claim made did not come within the terms of the stipulation, but was collateral and independent, as in the case now before us; and even went to the extent of saying that where there was an agreement for submitting the amount to be paid to arbitration, but where there was no expressed or implied condition that no action could be maintained until an award was made, that such agreement, while it would support a separate action for its breach, could not be pleaded in bar to an action on the principal contract.

We have examined all the cases cited by the appellees in support of their argument, and one of them does unequivocally sustain them, but the others, we think, can be plainly discriminated from the case at bar.

In *DeMattos* v. *Jordan*, 15 Wash. 378, the language of the contract was that "In case the contractor should not complete the building, the owner may do so and charge the expense to the contractor, and the expenses incurred by the owner as herein provided, either for furnishing materials or for *finishing* the work, shall be audited and certified by the architect, and his certificate shall be conclusive upon the parties." There not only was the certificate required in event of the contractor's failure *for any cause* to complete the building, but it was required for work *finished*, by whomsoever done. Thus abandonment of the work by the contractor, and its completion by another, came directly within the terms of the stipulation for

auditing and certifying. In *Cement Co.* v. *Biefeld*, 173 Ill. 179, the language of the contract was the same as in *DeMattos* v. *Jordan*, but no authority was cited to support the decision. The Court considered the case of *Fuller* v. *Doyle*, *supra*, but held in the case before it that the claim was upon the contract and not for damages independently of it, because, as the Court said, "when the plaintiff was called on for a bill of particulars, he filed the contract itself as part of the bill of particulars.. The mode adopted by the appellee for establishing the amount due him, is in accordance with the terms of the contract, and the case was tried on the theory that the appellee was entitled to such damages as were provided by the contract, and not damages outside of the contract."

In *Tally* v. *Parsons*, 131 Cal. 516, the contract was abandoned by the contractor, and the owner completed the work. The contract provided that "in such case" the expense should be audited and certified by the architect, and that such certificate should be a condition precedent to recovery. The Court said, "the very contingency arose for which provision was made as to procuring the certificate."

The case of the *American Bonding Company* v. *Gibson County*, 127 Fed. Rep. 671, decided in the West. Dist. of Tenn. was upon a contract identical with the present, and with that in *Fuller* v. *Doyle*, 87 Fed. Rep , *supra*. There the contractor did all the work except that covered by the final payment, after which he abandoned the work, and the architect's certificate was held necessary to a recovery by the owner. The Court attempted to discriminate that case from the Fuller case, on the ground that the contractor had nearly completed the work. That fact, however, cannot alter the legal principle governing the construction of the contract. The attempted discrimination is not satisfactory to us, and we prefer to follow the earlier decision in the Doyle case. The rulings upon the testimony, as well as upon the prayers, were all made upon the same erroneous construction of the contract, and the judgment must therefore be reversed.

*Judgment reversed with costs to the appellants
above and below, and new trial awarded.*