Oden Const. Co. *v.* Helton, et al.

June 8, 1953

No. 38791 34 Adv. S. 138 65 So. 2d 442

42

*Dudley W. Conner*, Hattiesburg, for appellant.

*R. A. Gray, Jr.,* and *C. W. Sullivan,* Hattiesburg, for appellees.

44

ETHRIDGE, J.

This case involves the sufficiency of an architect's certificate to support a prime contractor's termination of contract with a subcontractor, and a question of waiver of the termination clause by the subcontractor voluntarily abandoning his work. The cause is on appeal from an order of the Circuit Court of Forrest County sustaining demurrers to the original and amended declarations. Hence for purposes of this decision we must assume as true the averments of the declaration.

The original declaration, filed by the appellant, Oden Construction Company, plaintiff below, charged that on February 9, 1950, the plaintiff contracted with the Catholic Diocese of Natchez for the construction of a school in the City of Hattiesburg, and that on February 21, 1950, plaintiff entered into a subcontract with defendant Otho Helton, appellee, in which Helton agreed to furnish the materials and labor for all plumbing, heating and ventilating work on the school, according to plans and specifications, for a subcontract price of $17,500. The declaration charged that the subcontractor Helton furnished plaintiff with a surety bond for performance in which Helton was the principal obligor and the defendant J. Ed Turner, the other appellee, the surety; that

Helton began work under said contract and that plaintiff had paid defendant on it $8,606.26; that as the work progressed, the defendant Helton breached his subcontract in that he persistently and repeatedly refused and failed to supply enough properly skilled workmen and materials, persistently disregarded the instructions of the architect, and otherwise neglected to prosecute the work.

Various exhibits were attached to the declaration, including plaintiff's contract with the owner, plaintiff's contract with Helton, the subcontractor, and Turner's surety bond. Part of the contracts of plaintiff with both the owner and Helton were certain general conditions for the construction of buildings, in a standard form approved by the American Institute of Architects. There were forty-four of these conditions in numbered articles. Article 22 provided as follows:

"OWNER'S RIGHT TO TERMINATE CONTRACT. —If the Contractor should be adjudged a bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, if he should persistently or repeatedly refuse or should fail, except in cases for which extension of time is provided, to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment to subcontractors or for material or labor, or persistently disregard laws, ordinances or the instructions of the Architect, or otherwise be guilty of a substantial violation of any provision of the contract, then the Owner, upon the certificate of the Architect that sufficient cause exists to justify such action, may, without prejudice to any other right or remedy and after giving the Contractor seven days' written notice, terminate the employment of the Contractor and take possession of the premises and of all materials, tools and appliances thereon and finish the work by whatever method he may deem expedient. In such case the Contractor shall not be entitled to receive any fur-

ther payment until the work is finished. If the unpaid balance of the contract price shall exceed the expense of finishing the work including compensation for additional managerial and administrative services such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner as herein provided and the damage incurred through the Contractor's default, shall be certified by the Architect.''

The declaration charged that because of Helton's neglect and failure to comply with the subcontract, the architects repeatedly, together with plaintiff, requested and instructed Helton to supply adequate workmen and materials; that this condition existed for about ninety days, and the plaintiff requested of the architects a certificate under Article 22 which would warrant plaintiffs in terminating the subcontract. On November 15, 1950, the architects wrote plaintiff the following letter:

''We have repeatedly called to your attention the fact that the work in connection with the above captioned project seems to be lagging considerably. On several visits made by our Construction Engineer, Mr. Walker, it was found that there were no plumbers at work, which apparently seems to be the hold-up. Therefore, in view of this, we would insist that some definite action be taken, in order to move the progress of this construction.

''We trust that the 4″ revents have been installed to replace the 2″ revents that were called to your attention some time ago, as the 2″ revents are not acceptable to the City Ordinance, and therefore, the 2″ revent can not be approved by this office. Kindly give this matter your immediate attention, as we are very anxious to get this project completed as early as possible.''

On the same date, November 15, 1950, plaintiff wrote the subcontractor Helton, pointing out that plaintiff had been receiving notices of unpaid bills for materials and that Helton had failed to prosecute the work. Hence

the letter stated that plaintiff gave Helton seven days' notice under Article 22 that, unless he complied with the contract within the time provided in Article 22, plaintiff would terminate the contract, take possession of the premises, and finish the work. Also on November 15, 1950, plaintiff wrote the surety Turner stating similar facts, and saying that unless Helton or the surety complied with the contract within seven days, plaintiff would terminate Helton's contract as provided by Article 22, take possession of the premises, and finish the work.

Plaintiff further charged that the purpose of the architect's letter to plaintiff of November 15, 1950, was to authorize plaintiff to invoke the power to terminate the subcontract; and that on November 21, 1951, over a year later, the architects executed another certificate nunc pro tunc. This letter of November 21, 1951, was also attached as an exhibit. In it the architects wrote plaintiff that prior to November 15, 1950, Helton had wholly failed to comply with his subcontract, and that on that date sufficient cause then existed for plaintiff to invoke the termination power under the contract; that on November 15, 1950, they verbally advised plaintiff of this fact; and that by the above quoted letter of that date it was their intent and purpose to so certify, and that they did now so certify.

The declaration charged that notwithstanding the written notices given to Helton and Turner, Helton failed to proceed with the contract, failed to comply with the architect's instructions and to supply labor and materials, so that in conformity with Article 22 plaintiff on November 27, 1950, terminated the subcontract and completed the work under it; that because of the defendant's breach of his subcontract, plaintiff expended over and above the subcontract price the sum of $5,023.91, and that for that reason plaintiff has a cause of action against both the subcontractor and his surety.

Defendants demurred to the original declaration, mainly on the ground that an architect's certificate is

a condition precedent to invoking the termination power under Article 22; and that the letters of November 15, 1950, and November 21, 1951, from the architect, do not constitute as a matter of law a compliance with that requirement of Article 22. The trial court properly sustained that demurrer for that reason.

 Whether the termination power in Article 22 constitutes a forfeiture or not, it is well-established that this clause should be strictly construed and pursued. Valente v. Weinberg, 80 Conn. 134, 67 Atl. 369; American-Hawaiian Engineering & Construction Company v. Butler, 133 P. 280 (Calif.); White v. Mitchell, 30 Ind. App. 342, 65 N. E. 1061; Champlain Construction Company v. O'Brien, 104 Fed. 930.

Applying this principle to the facts, it is noted that Article 22 requires that the architect must certify "that sufficient cause exists to justify" termination of the employment, the sufficient cause being defined under these facts as "if he (the subcontractor) should persistently or repeatedly refuse or should fail . . . to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment to subcontractors or for material or labor, . . . or otherwise be guilty of a substantial violation of any provision of the contract. . . ." The letter of November 15th from the architects to plaintiff appears primarily to be one written in the usual course of an architect's supervision of a construction contract. No reference is made to a certification by the architects that Helton had done any specific thing which would be sufficient cause to terminate his contract. The architects stated that the work seemed to be lagging considerably, and that there were no plumbers at work on the last visit of their engineer, "which apparently seems to be the hold-up." Following this, they insisted that some definite action be taken, and requested the plaintiff's immediate attention.

 We do not think that this language constitutes an architect's certificate in compliance with the terms of

Article 22 which would warrant termination. The architects insisted "that some definite action be taken," but what that action was, was left to plaintiff's discretion. Nor did they suggest what steps plaintiff might take to move the progress of the work. And the last paragraph of the architects' letter deals with a minor, particular problem concerning events, which has no relation to any breach of contract by Helton.

The general rule seems to be that an architect must expressly certify that the owner is warranted in taking over the contract premises and materials for the purpose of completing the building, in order to justify such action and termination of the contract. 9 Am. Jur., Building and Construction Contracts, Section 47. Numerous cases discuss and apply this principle. Their facts vary considerably, but in substance their holding is that the architect's certificate must strictly or substantially follow the conditions precedent in Article 22, in order to warrant a contractor in terminating a subcontract. O'Keefe v. Corporation of St. Francis Church, 22 Atl. 329 (N. H.); Valente v. Weinberg, supra; Cook v. Ziff Colored Masonic Lodge No. 119, 80 Ark. 31, 96 S. W. 618; De Matto v. Jordan, 20 Wash. 314, 55 P. 118; White v. Mitchell, supra; Charlton v. Scoville, 39 N. E. 394 (N. Y.); Champlain Construction Company v. O'Brien, supra; Cincinnati N. O. & T. P. R. R. Co. v. Fidelity & Deposit Company of Md., 296 Fed. 298; Benson v. Miller, 56 Minn. 410, 57 N. W. 943. Hence the trial court was correct in finding that the architect's letter of November 15, 1950, was not a sufficient compliance with Article 22.

Appellant further contends that the letter of the architects to appellant, dated November 21, 1951, more than a year after the architects' letter of November 15, 1950, constitutes a valid nunc pro tunc letter and certificate in full compliance with Article 22. However, the purpose of a nunc pro tunc act applies only to

situations where it is necessary to perfect the record of some action which was in fact previously taken and not properly recorded. Such action does not have any application to supply a previously omitted or nonperformed act, or to cure some prior fatal defect. Green v. Myrick, 177 Miss. 778, 171 So. 774 (1937); Jackson v. Gordon, 194 Miss. 268, 11 So. 2d 901 (1943). Nor does appellant cite any authority which holds that an architect's certificate can correct retroactively the omission of a condition precedent. Hence the attempt a year later to cure the failure of the architects' letter of November 15, 1950, to comply with Article 22 was of no avail.

After the trial court sustained the demurrer to the original declaration, appellant filed an amendment to it, which charged that about thirty days before November 15, 1950, Helton advised plaintiff, in the presence of Turner, the surety, that he was unable to furnish sufficient labor to complete the job because of the lack of finances, and that the surety stated that he would see that Helton secured finances to complete the job; that nevertheless Helton did not proceed with the job, and that on or before November 15th Helton waived the conditions of Article 22 by abandoning the work and voluntarily surrendering the premises to plaintiff for its completion; that Helton advised plaintiff that he was not able to complete the job and that the plaintiff would have to complete it; and that Helton picked up his tools, left the job, and has never returned nor communicated with plaintiff. To this amended declaration Helton and Turner filed separate demurrers, which the circuit court sustained.

 We think that the amendment to the declaration charging a waiver by defendants of Article 22 of the contract was sufficient as a matter of law to withstand the demurrers. The basic rule is stated in 9 C. J., Building and Construction Contracts, Section 152, page 814: "The contractor may waive the necessity for notice; and it has been held that the necessity of giving notice of an

intention to take possession and to complete the work applies only where the builder is attempting to complete the work in accordance with the contract, and not where he has completely abandoned it, or where defective work is discovered after completion, and in such a case the architect's certificate that the builder is not complying with his contract is not required.''

To the same effect is 17 C. J. S., Contracts, Section 512b, p. 1097. 9 Am. Jur., Building and Construction Contracts, Section 72, states that ''the parties to a building or construction contract may modify or waive their rights under it. . . .'' Numerous cases hold that where a builder refuses to comply with his contract and completely abandons it, by refusing to perform it, it will be considered that he has waived the requirement of an architect's certificate in order for the owner or prime contractor to terminate the contract. George A. Fuller Co. v. Doyle, 87 Fed. 687, (C. C. Mo. 1898); Bacogalupi v. Phoenis Bldg. & Const. Co., 14 Cal. App. 632, 112 P. 892 (1910); Heidbrink v. Schaffner, 147 Mo. App. 632, 127 S. W. 418; Watson v. Dewitt County, 19 Tex. Civ. App. 150, 46 S. W. 1061 (1898); Aetna Indemnity Co. v. George A. Fuller Co., 111 Md. 321, 73 A. 738, 74 A. 369 (1909).

In Jackson Lumber Co. v. Moseley, 193 Miss. 804, 11 So. 2d 199 (1942), the contractor advised the owner by letter that he had made default in completing the construction contract and requested the owner to meet the payrolls. This Court said: ''By his letter he notified the owner he was unable to complete the job and could not pay for the labor. We think the owner had the right to conclude that the contractor had failed to fulfill the contract. It is said in 9 Am. Jur., page 49, Sec. 69, 'In accordance with the rule adopted in a majority of jurisdictions with respect to contracts generally, where a party to a building or construction contract announces his intention not to perform, the other party thereto may treat the contract as broken—.' ''

In brief, the Court held that abandonment of the contract by the contractor constituted a breach of it which warranted the owner in completing the construction. It was further said that the requirement in the construction contract for an architect's certificate as to final completion was waived by the contractor and his assignee by abandonment of the contract.

Appellees' response to these authorities is that the original and amended declarations set forth inconsistent allegations and causes of action; that the original declaration was based upon the contract, and the amendment was based not on the contract but outside of it, that appellant elected its remedy and right by its letters to appellees in November, 1950, attempting to proceed under Article 22 of the contract; and that appellant therefore is now estopped to assert that appellees' abandonment of their contractual obligations constituted a waiver. But we think that both the original and amended declarations proceed upon the contract. The original complaint was based upon an alleged compliance with Article 22. The amended declaration was based upon violation by appellees of their contractual obligations and a waiver by appellees of the termination provisions of Article 22. In those respects the amendment is sufficient.

Nor do we think that the surety Turner is, under the averments of the amended declaration, in any different position from Helton. The amendment specifically charges that the surety was present when Helton advised plaintiff that he would be unable to complete the contract, and that Turner stated to plaintiff that he would see that Helton secured sufficient finances to proceed with the job; and that notwithstanding the assurance of Turner, Helton did not proceed with the job but in fact completely abandoned it and voluntarily surrendered the premises to plaintiff. This is a sufficient allegation that the surety knew and acquiesced in Helton's violation of his contract obligations. Moreover, Tur-

ner's surety bond contained the following provision: "It is understood and agreed that no extension of time given to the principal obligor for the performance of said contract, or any portions thereof, and no changes or alterations of the said contract shall release the surety herein."

This clause authorizes the principal obligor and the plaintiff to change or alter the subcontract without releasing the surety. See George A. Fuller Co. v. Doyle, supra; Henry Smith & Sons v. Jewell, 104 Md. 269, 65 A. 6; School Dist. of Eau Claire v. Blystone, 168 Wis. 471, 170 N. W. 721. Moreover, by letter of November 15, 1950, from plaintiff to Turner, the surety was advised that Helton had breached his contract.

In brief, the architect's letter of November 15, 1950, was not a sufficient compliance with Article 22 which would warrant termination by plaintiff of the contract, but the amendment to the declaration sufficiently charges as a matter of law that appellees waived the termination provisions of Article 22 by Helton completely abandoning the contract and refusing to comply with his obligations under it. Hence the order of the circuit court erroneously sustained the demurrers. The case is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

All Justices concur.