AETNA INDEMNITY COMPANY ET AL. vs. GEORGE
A. FULLER CO.

*Presumption as to Time of Delivery of Letters—Pleas Stating
Conclusions of Law—Building Contract—Certificate of Arch-
itect Not Based on Personal Examination—Certificate Dis-
pensed With—Declaration in Action on Bond of Sub-Con-
tractor—Abandonment of Work Not Requiring Architect's
Certificate as to Cost of Completion—Evidence as to Measure
of Damages—Antecedent Parol Agreement Inconsistent With
Written Contract—Statements by Contractor to Surety on
the Bond of Sub-Contractor—Evidence—Instructions—No-
tice to Surety of Abandonment of Work by Contractor—Rea-
sonable Time for Election to Complete Work—Insufficient
Evidence of Fraud in Obtaining Bond.*

In the absence of evidence of actual delay, it will be assumed
that a letter posted in Baltimore during business hours on a
certain day, was delivered in New York on the morning of the
next day.

In an action by a corporation on a bond and contract, a plea
by the defendant alleging that the plaintiff is not a corpora-
tion legally entitled to maintain the suit, and a plea alleging
that "all liability, if any, of this defendant under the alleged
writing obligatory has been released," are both bad on de-
murrer, because they state only conclusions of law, without
giving the facts upon which the conclusions are based.

When a building contract provides that the expense incurred
in finishing certain work, if abandoned by the sub-contractor,
shall be audited and certified by the architect, whose certifi-
cate thereof shall be conclusive upon the parties, an archi-
tect's certificate is inadequate and inadmissible in evidence,
when it appears that the auditing was made merely on the
vouchers of expense produced by the contractor, who com-
pleted the abandoned work, and not upon a personal examina-
tion and inspection by the architect of the work done.

A bond conditioned for the due performance of a building con-
tract provided that the surety should be promptly notified of
any default on the part of the principal which would result
in a loss for which the surety would be liable, and that if the
principal failed to comply with the terms of his contract, the
surety, upon receiving notice thereof, should have the right
to sublet or complete the contract. The declaration in an
action on the bond against the surety did not expressly allege
that notice of the default of the principal had been given to
the surety and an opportunity afforded him to sublet or
complete the contract. *Held*, that it is not necessary to allege
the performance of these conditions in the declaration, but
that their non-performance is a matter of defense.

A plea is bad which merely alleges that the plaintiff violated
the terms of the contract on his part to be performed, without
stating any facts which would enable the Court to declare the
law arising upon the facts, and without informing the oppo-
site party of what is meant to be proved.

An agreement between the contractor for the erection of a build-
ing, and a sub-contractor for the doing of a part of the work
thereon, provided that should the sub-contractor neglect to
supply sufficient materials or workmen, or fail in any respect
to prosecute the work with diligence, or fail in the perform-
ance of any of his agreements, the contractor should be at
liberty, after notice, to provide for such work and charge the
cost thereof to the sub-contractor, and that "the expense in-
curred by the contractor in furnishing materials or finishing
the work shall be audited and certified by the architect, whose
certificate thereof shall be conclusive upon the parties." *Held*,
that this stipulation is not applicable when the sub-contractor
wholly abandons the work, but that in such case the contractor
is entitled to recover the damages suffered by him on account
of the breach of the contract without the production of the
architect's certificate, and that the ordinary rules of evidence
govern in ascertaining the amount of the damages.

*Held*, further, that in an action against the surety on the bond
of the sub-contractor, evidence is admissible to show that the
work done by the contractor in completing the sub-contract-
or's work was necessary; that the prices paid for labor and
materials were the prevailing market prices; and the plaintiff

may also show by the evidence of an architect qualified as an expert what was the reasonable cost of doing such work.

When a contractor for the doing of certain work suspends operations and consents to the appointment of a receiver of his affairs, that is an abandonment by him of the contract.

When the certificate of an architect as to the cost of certain work is declared by the contract to be conclusive upon the parties, the production of such certificate is dispensed with when the architect wholly refuses to give a proper certificate based upon his personal examination of the work, although requested by the plaintiff so to do.

An agreement between a building contractor and a sub-contractor provided that any materials purchased by the contractor for the sub-contractor, or any money advanced to the sub-contractor for payrolls, etc., shall be charged to the account of the sub-contractor and be considered as part payment on the contract. In an action on a bond conditioned for the due performance of this agreement, evidence is not admissible to show that prior to its execution, the contractor had promised to finance the work of the sub-contractor and to advance the necessary money. Such oral agreement is inconsistent with the terms of the written contract.

In an action on a sub-contractor's bond, evidence is not admissible to show what statements concerning bidders on the contract were made by the agent of the obligee to the surety, since that matter is wholly irrelevant.

A witness cannot be asked to give his opinion as to why a certain party did not make a payment..

After a contractor had advanced large sums of money to and for his sub-contractor, he notified the creditors of the latter that he would make no further advances. In an action on the bond of the sub-contractor, who had abandoned the work, evidence is not admissible to show that he could get no more materials from the persons who had been so notified. The contractor was not bound to furnish the sub-contractor with all the money necessary to complete the contract when demanded, and the refusal of the former to do more than he was required to do by his contract, and the effect of such refusal on the ability of the sub-contractor to perform his

agreement, are immaterial to any issue in the action on the bond.

When a sub-contractor has abandoned work and the same has been completed by the contractor, the measure of damages in an action on the former's bond is the reasonable cost incurred in completing the work, less the balance of the contract price remaining in the hands of the plaintiff.

In an action against a sub-contractor and his surety, one plea, upon which issue was joined, alleged that the plaintiff did certain acts with the fraudulent and malicious purpose of making it impossible for the sub-contractor to complete the work. *Held,* that since there is no evidence of such purpose, the jury was properly instructed that upon that issue, their verdict should be for the plaintiff.

An agreement between a contractor and a sub-contractor provided that the contract price of work should be paid in installments as the work progressed. The sub-contractor abandoned the work after he had received $60,000 out of a total contract price of $68,000 and at a time when only from fifty to sixty per cent. of the work had been done. In an action on the bond of the sub-contractor, *held,* that the jury was properly instructed that, although the plaintiff was obligated to make payments in installments, a failure on his part to do so would not prevent his recovery in this case.

When a party has the right to finish work abandoned by a contractor and charge the cost against him and his surety, he is entitled to recover from the surety the reasonable cost of finishing the work, and the jury should not be instructed that he is only entitled to recover the lowest reasonable cost.

When there is no evidence that a surety was induced to execute a bond by material false representations on the part of the obligee, he cannot complain on appeal that a prayer offered by him, which instructed the jury that if they found that such misrepresentations were made and induced the execution of the bond, then their verdict must be for the defendant, was modified by the trial Court's instructing the jury that in such event, their verdict may be for the defendant.

When a contract provides that a thing shall be done after the happening of an event, but prescribes no time for its per-

formance, the question whether or not it was done within a
reasonable time is one of law for the Court.

The bond executed by a sub-contractor and the defendant com-
pany, his surety, provided that if the principal should aban-
don the work, then the surety, upon receiving from the obli-
gee, the plaintiff, prompt notice after default, by personal
delivery or registered mail, should have the right and privi-
lege to sublet or complete the contract. The sub-contractor
stopped work on August 23rd, and on that day plaintiff wrote
from Baltimore notifying the defendant in New York that a
bill -for a receiver had been filed against the sub-contractor,
alleging insolvency. On August 24th, plaintiff wrote again,
stating that the sub-contractor had abandoned the work. On
August 29th, plaintiff wrote to defendant stating that a re-
ceiver had been appointed and that the plaintiff had entered
upon the premises. On September 1st, plaintiff wrote call-
ing attention to the previous letters and saying that, not hav-
ing heard from the defendant, it assumed that defendant did
not deem it advantageous to sublet or complete the contract,
and that plaintiff would on September 4th proceed to complete
the work. The defendant finally replied September 4th, ac-
knowledging receipt of these letters, and saying that it would
have to obtain the acquiescence of its indemnitors in its action
as surety. *Held,* that since it must be assumed that these let-
ters were delivered in New ·York on the day after they were
posted, defendant had had a reasonable time in which to make
its election whether to sub-let or complete the contract.

*Held,* further, that a prayer offered by the defendant was prop-
erly refused which instructed the jury that if they found that
the plaintiff failed to afford the defendant a reasonable op-
portunity to sublet or complete the contract as the defendant
might elect, then their verdict must be for the defendant.

### *Upon Motion for Re-Argument.*

The surety on the bond of a sub-contractor for the doing of cer-
tain construction work pleaded, in an action against it by the
contractor, that the bond sued on was obtained by the fraud
and misrepresentation of the plaintiff, and in support of the
plea offered evidence that the agent of the plaintiff had repre-    ·
sented that the bids of three other responsible bidders had

been submitted, which were within $2,000 of the contract price agreed upon between the plaintiff and the sub-contractor. *Held,* that even if such representations were made, it would not constitute fraud inducing the defendant to execute the bond, but that to constitute a defense on that ground it was necessary to show, either that no bids from other parties were received, or that if such were received, they were not within $2,000 of the contract price, or, if so received, that plaintiff's agent represented these bidders to be financially responsible when he knew that they were not.

*Held,* further, that there is in the case no proof of any one of these three matters.

From the fact that a September 2nd fell on Sunday, and that September 3rd was Labor Day, and a holiday, it cannot be assumed that a large corporation in New York which had been previously notified of the necessity of prompt action in a certain matter, did not receive, either on Sunday or Monday, a letter addressed to it and posted in Baltimore on September 1st.

*Decided June 30th, 1909.*

*Opinion upon motion for re-argument filed November 16th, 1909.*

Appeal from the Superior Court of Baltimore City (EL-LIOTT, J.).

*Plaintiff's 1st Prayer, as Amended.*—If the jury believe from the evidence that the plaintiff is a corporation and that the plaintiff and the defendant, the Southern Construction Co., entered into the contract dated the 26th day of May, 1906, offered in evidence, relating to concrete work at the Friedenwald Building, and that said company commenced the said work comprehended under said contract and continued to prosecute the same until the 23rd day of August, 1906, and that on said date the said defendant, the Southern Construction Co., abandoned said work without first completing the same; and shall further find that the plaintiff took charge of the said unfinished work and completed the same; and if they shall further find that the plaintiff had up to the time of said

abandonment of the work fully performed its part of said contract; and if they shall further find that said Southern Construction Company, and the defendant, the Aetna Indemnity Company, executed and delieved to the plaintiff the bond sued on in this case, and offered in evidence then, unless the jury further find that the defendant, the Aetna Indemnity Company has shown by a preponderance of the evidence in this case that the bond sued on was obtained from it by the fraud or misrepresentations of the plaintiff, the verdict of the jury upon the whole case should be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer, as Amended.*—The Court instructs the jury that if they find in favor of the plaintiff, then in estimating the damages they shall allow the plaintiff such reasonable cost or expense as the plaintiff should have incurred in completing that portion of the work called for in the contract between the plaintiff and the defendant, the Southern Construction Company; which they shall find was not performed by said latter company; less, however, the balance of the contract price remaining in the hands of the plaintiff, which amounts to the sum of $10,138.48. The said balance has been arrived at upon the following calculation:

| | |
|---|---:|
| Original contract price | $66,067.00 |
| Extras | 1,860.00 |
| Total contract price and extras | $67,927.00 |
| Less payments on account, aggregating | 59,788.52 |
| Balance | $8,138.48 |
| To which is to be added the reasonable value of concrete sacks and other items, which are fixed by the agreement of the parties at the sum of | 2,000.00 |
| Making the total balance in the hands of the plaintiff the sum of | $10,138.48 |

as above stated.

The jury may allow interest if in their discretion they deem it proper to do so. (*Granted.*)

*Plaintiff's 6th Prayer.*—The Court instructs the jury that there is no evidence in this case legally sufficient to support the allegations of the thirteenth plea of the defendant, the Southern Construction Company, and their verdict upon the issues raised in that plea should, therefore, be for the plaintiff, as against the Southern Construction Co. (*Granted.*)

*Plaintiff's 8th Prayer, as Amended.*—The Court instructs the jury that the representations said by the witness, Hunter, to have been made to him by the witness, Witherspoon, respecting the agreement of the George A. Fuller Company to finance the work comprehended in its contract with the Southern Construction Company, and respecting the alleged absence of financial risk to be assumed by the Aetna Indemnity Company, as surety, by reason of the financing by the Fuller Company aforesaid, are not such representations even if made as constitute a defense to this action. (*Granted.*)

*Eighth Prayer of Aetna Indemnity Company.*—If the jury shall find that the failure of the Southern Construction Company to prosecute the concrete work mentioned in the evidence, was not wilful or deliberate on its part, but was caused by the refusal of the plaintiff to advance funds to the Southern Construction Company to carry on the work in conformity with an agreement between it and the Southern Construction Company relied on by the Aetna Indemnity Company in executing and delivering the bond sued on (if the jury find such agreement), and that such agreement to advance said funds was material to the assumption of the risk on said bond by said Aetna Indemnity Company, then the plaintiff cannot recover in this case against the Aetna Indemnity Company without the production of a valid certificate of Ballinger & Perrot, architects, ascertaining the amount of expense and loss under the fifth paragraph of the contract dated May 26th, 1906, offered in evidence, and the plaintiff having produced no such certificate, the verdict must be for the Aetna Indemnity Company, unless the jury shall believe that the

failure of the plaintiff to produce such certificate was due to
causes beyond its own control.   (*Refused.*)

*Ninth Prayer of Aetna Indemnity Company.*—If the jury
shall find from the evidence that the plaintiff and the South-
ern Construction Company entered into an agreement on or
about May 26th, 1906, for the construction of certain con-
crete work on the Friedenwald building, and that the plain-
tiff thereby undertook to advance the money necessary for the
performance of the agreement by the Southern Construction
Company up to 95 per cent. of the total amount of the price
to be paid therefor, and shall further find that the bond in
this case was executed and delivered by the Aetna Indemnity
Company on the faith of such agreement, and that same was
material to the assumption of the risk by the Aetna Indem-
nity Company and shall also find that on or about June 5th,
1906, the plaintiff and the Southern Construction Company,
without the assent of the Aetna Indemnity Company, entered
into the written contract offered in evidence by the plaintiff,
then the verdict must be for the defendant the Aetna Indem-
nity Company.   (*Refused.*)

*Tenth Prayer of Aetna Indemnity Company.*—If the jury
shall find from the evidence that after the failure of the
Southern Construction Company to prosecute the concrete
work as shown by the testimony the plaintiff failed to afford
to the Aetna Indemnity Company a reasonable opportunity
to sub-let or complete the contract mentioned in the bond of
May 26th, 1906, as the Aetna Indemnity Company might
elect or decide, the verdict must be for the Aetna Indemnity
Company.   (*Refused.*)

*12th Prayer of Aetna Indemnity Company.*—The Court
instructs the jury that it was the duty of the plaintiff to com-
plete the contract mentioned in the bond in this case at the
lowest reasonable cost, and if they find for the plaintiff they
should not allow to the plaintiff damages in excess of such
lowest reasonable cost, with interest thereon in their discre-
tion.   (*Granted.*)

*13th Prayer of Aetna Indemnity Company.*—That there is no legally sufficient evidence in this case to entitle the plaintiff to recover the penalty of $50 per day under the 14th clause of the contract between the plaintiff and the defendant the Southern Construction Company offered in evidence. (*Graned.*)

*14th Prayer of the Aetna Indemnity Company.*—That by the undisputed evidence in this case the defendant the Aetna Indemnity Company is entitled to a credit of $8,138.48, being the unexpended balance of the contract price, and a further credit of $2,000.00 being the sum of various allowances conceded by the plaintiff, in reduction of the amount which the jury may find to be the lowest reasonable cost of completing the work covered by the contract between the plaintiff and the defendant the Southern Construction Company. (*Granted.*)

*15th Prayer of Aetna Indemnity Company.*—That acording to the true legal interpretation of the 13th clause of the written contract dated May 26th, 1906, offered in evidence, the plaintiff was obliged to make payments to the Southern Construction Company on account of the total contract price of $66,067, in instalments as the work mentioned in said contract progressed, to within five per cent. of the total amount of the contract, the remaining five per cent. to be held back until time for the final payment arrived, and if the jury shall find that the Southern Construction Company failed to prosecute the work on the Friedenwald building, because of the refusal of the plaintiff to make advances to said Southern Construction Company of the funds necessary to carry on said work in accordance with such legal interpretation of said contract, then the plaintiff cannot recover in this case against the Aetna Indemnity Company, but the verdict of the jury must be for the said defendant.   (*Refused.*)

*16th Prayer of Aetna Indemnity Company.*—If the jury find that Leslie Witherspoon, the manager of the plaintiff, represented to Archibald J. Hunter, agent of the Aetna Indemnity Company, on or about May 26th, 1906, and prior

to the execution and delivery of the bond in suit, that the plaintiff had received other bids for the work covered by the contract guaranteed by said bond at or within two thousand dollars of the contract price of $66,067, and that the Aetna Indemnity Company in reliance on such representation executed and delivered the said bond, and if they shall further find from the evidence that such representation was material to the assumption by the Aetna Indemnity Company of liability thereon, and that the said representation was untrue, then the plaintiff cannot recover in this case against the Aetna Indemnity Company, but the verdict of the jury must be for said defendant. (*Refused.*)

*17th Prayer of Aetna Indemnity Company.*—The Court instructs the jury that if they find that Leslie Witherspoon, the manager of the plaintiff, represented to Archibald J. Hunter, agent of the Aetna Indemnity Company, on or about May 26th, 1906, and prior to the execution and delivery of the bond in suit that there was no practical risk on said bond as the George A. Fuller Company would advance the funds necessary to finance the work and that the Aetna Indemnity Company in reliance on such representation executed and delivered the said bond, and if they shall further find from the evidence that such representation was material to the assumption by the Aetna Indemnity Company of liability thereon, and that the said representation was untrue in fact, then the plaintiff cannot recover in this case against the Aetna Indemnity Company, but the verdict of the jury must be for said defendant. (*Refused.*)

*18th Prayer of Aetna Indemnity Company.*—If the jury find that Leslie Witherspoon, the manager of the plaintiff represented to Archibald J. Hunter, agent of the Aetna Indemnity Company on or about May 26th, 1906, and prior to the execution and delivery of the bond in suit, that the plaintiff had received other bids for the work covered by the contract guaranteed by said bond at or within $2,000.00 of the contract price of $66,067.00, and that there could therefore be no practical risk on said bond, and that the Aetna

Indemnity Company in reliance on such representations executed and delivered the said bond, and if they shall further find from the evidence that such representation was material to the assumption by the Aetna Indemnity Company of liability thereon, and the said representation was untrue in fact, then the plaintiff cannot recover in this case against the Aetna Indemnity Company, but the verdict of the jury must be for said defendant. (*Refused.*)

*2nd Prayer of Aetna Indemnity Company as Modified and Granted by the Court.*—The Court instructs the jury that according to the true legal interpretation of the thirteenth clause of the written contract, dated May 26th, 1906, offered in evidence, the plaintiff was obligated to make payments to the Southern Construction Company on account of the total contract price of $66,067, in instalments as the work mentioned in said contract progressed, to within five per cent. of the total amount of the contract, the remaining five per cent. to be held back until time for the final payment arrived, but a failure on the part of said plaintiff to make such payments, if found by the jury, would not prevent a recovery in this case by the plaintiff. (*Granted.*)

*16th Prayer of Aetna Indemnity Company as Modified and Granted by the Court.*—The Court instructs the jury, that if they find that Leslie Wihterspoon, the manager of the plaintiff, represented to Archibald J. Hunter, agent of the Aetna Indemnity Company, on or about May 26th, 1906, and prior to the execution and delivery of the bond in suit, that the plaintiff had received other bids for the work covered by the contract guaranteed by said bond at or within two thousand dollars of the contract price of $66,067, and that the Aetna Indemnity Company in reliance on such representation executed and delivered the said bond, and if they shall further find from the evidence that such representation was material to the assumption by the Aetna Indemnity Company of liability thereon, and that the said representation was untrue, then the verdict of the jury may be for the said defendant, the Aetna Indemnity Company, although the jury

may also find the other facts offered in evidence by the plaintiff. (*Granted.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*George Whitelock* and *W. Thomas Kemp* (with whom was *David Fowler* on the brief), for the Aetna Indemnity Co., appellant.

*Joseph N. Ulman* and *Clarence A. Tucker* (with whom were *Harman & Knapp* on the brief), for the appellee.

*H. H. Hubner* filed a brief for the Southern Construction Company.

PEARCE, J., delivered the opinion of the Court.

This action was brought by the George A. Fuller Company, a foreign corporation, upon a bond executed by the Southern Construction Company of Baltimore, Maryland, as principal, and by the Aetna Indemnity Company of Hartford, Connecticut, as surety, in the penalty of fifty thousand dollars. These parties will be hereinafter designated briefly as the Fuller Company, the Southern Company and the Aetna Company. The Fuller Company had entered into a contract for the erection complete of a certain building in Baltimore City, known as the Friedenwald Building, and had sublet all the reinforced concrete and cement work thereof to the Southern Company, under a written agreement between them, dated May 26th, 1906. Under this agreement the Southern Company was required to furnished "a surety bond" in the amount of $50,000 for the faithful performance of the contract. The contract price to be paid the Southern Company for work and materials thereunder was $66,067, and $6.50 per cubic yard for all additional concrete work, and such sum was "to be paid by the contractor (the Fuller Company)

to the sub-contractor (the Southern Company) in instalments as the work progresses."

The fifth and thirteenth clauses of this agreement are the important clauses in this case, and the essential parts thereof are therefore transcribed as follows: "Fifth. Should the sub-contractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or sufficient materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the contractor shall be at liberty, after three days' written notice to the sub-contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due, or thereafter to become due, to the sub-contractor under this contract; and the contractor shall also be at liberty to terminate the employment of the sub-contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor, and in case of such discontinuance of the employment, the sub-contractor shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance to be paid under this contract, shall exceed the expense incurred by the contractor in finishing the work, such excess shall be paid to the sub-contractor; but if such expense shall exceed such unpaid balance, the sub-contractor shall pay the difference to the contractor. The expense incurred by the contractor as herein provided, either for furnishing the materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

Thirteenth. "Any material purchased by the contractor for the sub-contractor, or any money advanced by the contractor to the sub-contractor for pay rolls, etc., shall be charged

to the account of the sub-contractor, and shall be considered as part payment on this contract. Payments to the sub-contractor may be thus made to within five per cent. of the total amount of this contract, the remaining five per cent. to be held back until time for the final payment arrives." The contract required the entire work, except the tooling of the exterior walls, to be completed Sept. 1st, 1906.

In compliance with this agreement the Southern Company furnished the bond sued on and hereinbefore mentioned, which was signed and sealed by the Southern Company, and by the Aetna Company May 26th, 1906.

The condition of that bond is as follows:

"The condition of the foregoing obligation is such that if the said principal shall conform to and comply with all the terms and covenants of a certain contract between said principal and said contractor, *dated May 26th, 1906,* relating to concrete work on Friedenwald Building as per contract, on the part of said principal to be performed and complied with, according to the tenor of said contract, then this obligation to be null and void, otherwise to be and remain in full force and effect."

It was further provided in said bond as follows: "This bond is executed by the surety and received by the contractor upon the following express conditions:" Here follow eight separate conditions of which it is only necessary to set out parts of the third and seventh.

"*Third.* If the said principal abandon said contract, or fail to comply with any or all of the conditions of said contract to such an extent that the same shall be forfeited, then said surety, upon the notice above stated (prompt notice after default by personal delivery or registered mail) shall have the right and privilege to sublet or complete said contract, whichever said surety may elect to do, provided it be done in accordance with said contract."    *    *    *

"*Seventh.* If, after default and notice of such default to the surety the principal shall continue to proceed with the performance of the contract, the contractor may pay the prin-

cipal for work done and material supplied without affecting
the liability of the surety hereunder, unless the surety shall
serve a notice upon the contractor directing it to withhold
such payments, in which event the contractor *may* only pay for
the work and labor performed subsequent to the default, less
the reserve provided for in the contract, and *must* withhold
the balance of the payments to secure the performance of the
contract."

There seems to be no question upon the evidence, that the
bond was executed on the day it bears date, May 26th, 1906.
Witherspoon, plaintiff's manager, was not able to say whether
either the bond or contract was executed May 26th or June
5th, but Hunter, the Baltimore agent of the Aetna Company,
said he had seen no written contract when the bond was exe-
cuted, and Purnell, secretary of the Southern Company, who
signed the bond, swore positively that the contract was not
executed and was not in existence, on May 26th, and that he
knew it was executed on June 5th.    Witherspoon testified
positively that he showed Hunter either the contract or an
exact copy before delivery of the bond, though he could not
fix the exact date of delivery, and Hunter admitted that he
was "furnished a precise copy of the written agreement of-
ferred in evidence, on June 5th, 1906, and that on July 26th,
1906, his company accepted payment of the premium on this
bond from the Fuller Company, through the office of the
Southern Company."    Work under the contract was begun
as nearly as appears from the evidence, about June 7th, 1906,
before the delivery of the bond according to Witherspoon's
recollection of the fact.

The Southern Company stopped work August 23, 1906,
and never resumed it.    On August 23, 1906, the Fuller Com-
pany wrote the Aetna Company that a bill for a receiver had
been filed against the Southern Company alleging its insol-
vency, and that while work had not then actually stopped,
they were advised the Southern would probably consent to
the appointment of a receiver, and they asked the advice of
the Aetna Company for the protection of their mutual inter-

ests. On August 24th they again wrote, stating that the Southern had actually stopped work, and that while a receiver had not then been appointed, they were advised the Southern would consent, and they should therefore look to the Aetna's bond. They also enclosed carbon copy of their letter of same date to the Southern that unless work was resumed at once its employment would be terminated, and the Fuller Company would look to the bond. On August 29th, the plaintiff again wrote the Aetna Company, stating that a receiver had been appointed on the 28th, the Southern consenting thereto, and admitting its insolvency. They also stated they had terminated the employment and had entered upon the premises and taken possession "for the purpose of completing *or having completed* the work comprehended under the contract," and they enclosed carbon copy of letter of same date to the Southern Company, and also to Mr. Geo. R. Willis, its receiver, conveying the same notice as that given the Aetna Company. The receipt of all these letters was admitted. On September 1st, they again wrote the Aetna Company calling their attention to their previous letters and saying, "not having heard from you, we assume that you do not deem it to your advantage to go ahead *and sublet or complete said* contract, and accordingly this company will on next Tuesday, September 4th, 1906, *in order to keep the damages down to as low a figure as possible,* make a start for the completion of the work comprehended under the contract, holding your bond responsible for any loss we sustain in the premises."

On September 4th, the Aetna Company briefly acknowledged the letter of August 29th, stating that they had been waiting for a communication from their indemnitors, and on the same day also acknowledged their letter of September 1st, stating their surprise that the plaintiff should have chosen to go ahead with the contract on the fourth, when they knew their letter of first inst. could not possibly reach the Aetna Company in New York before the fourth inst, and saying: "You seem to overlook the fact we have indemnitors from any

loss on account of the *insurance* of the above bond, and that it is quite necessary for us to obtain their acquiescence in whatever action this company might take as surety." It may be observed here that no testimony was offered to show the time required for transmission and delivery of a letter from Baltimore to New York, but in the absence of some evidence of actual delay, it is common knowledge that a letter written during business hours in Baltimore on any day except Saturday, would be delivered in New York in the early morning delivery of the next day, and if written on Saturday afternoon, would be delivered on Monday morning. It is quite impossible to conceive that a letter mailed in Baltimore on Saturday, September 1st, could not be delivered in New York until Tuesday the fourth. It is also to be observed that the Aetna Company in this letter characterizes the bond very properly as a contract of *insurance.*

It appears from the testimony of both sides that when the work was stopped on August 23rd, from 50 per cent. to 60 per cent. of the work on this contract had been done, while the plaintiff had paid the Southern Company before its actual failure on the 28th of August, about $60,000 on their $68,000 contract.

The declaration contains three counts of a simple character. The first count sets out the condition of the bond, and charges as a breach, the abandonment of the contract long before its completion, alleging that the plaintiff was damaged by being compelled to complete the unfinished work, and to pay out large sums of money in doing so.

The second count sets out the condition of the bond, and the insolvency of the Southern Company, and charges as a breach the stopping of the work long before its completion; it alleges the giving of due notice and termination of the contract, the completion of the work by the plaintiff, the provision for auditing the cost of completion by the architect and damage sustained by the default, the certificate of such audit and the plaintiff's demand for the amount thereof, and the defendant's refusal to pay the same. The third

count set out the condition of the bond and the entire fifth clause of the contract; alleged as a breach that before completing the contract the Southern became insolvent, consented to the appointment of a receiver and stopped work, and further alleged in like manner the termination of the employment, the completion of the work by the plaintiff, the certificate and award of the architects, the demand of the plaintiff for the amount of the award, and the defendant's refusal to pay the same.

The subsequent pleadings are voluminous. The Aetna Company first filed fourteen pleas to the whole declaration, the 13th and 14th being the same as the 8th and 9th, but filed on equitable grounds. The substance of these pleas may be condensed as follows: 1st. That the plaintiff is not a corporation. 2nd. Plaintiff not a corporation legally entitled to sue. 3rd. *Non est factum* as to the bond sued on. 4th. That the paper filed with the declaration purporting to be a certificate of the architects, was not a certificate. 5th. That said alleged certificate was obtained by the plaintiff by fraud. 6th. That the contract was, before the time for its fulfillment, without defendant's consent, so materially altered as to release defendant from all liability on the bond. 7th. That all liability, if any, of defendant on the bond had been released. 8th. That plaintiff, before May 26th, agreed with the Southern Company to supply it with all necessary money to complete said contract, and to finance all its requirements thereunder; that plaintiff failed and refused to comply with this agreement, with the fraudulent purpose of causing the Southern Company to make default, and thereby to enable the architects to assess damages against that company; and the plea further alleged that said architects were the creatures and tools of the plaintiff, absolutely dependent upon it for employment, and that they could not, and did not, fairly assess any damages that might have accrued in the matter. 9th. That the alleged architects' certificate was not their *bona fide* finding, but was the result of a fraudulent design to mulct the two defendant companies in damages. 10th.

That under the contract the plaintiff was indebted to the Southern Company in an amount equal to, and greater than, the damages claimed by plaintiff. 11th. That the bond sued on was obtained by the fraud and misrepresentation of the plaintiff. 12th. That the alleged architects' certificate was obtained by fraud. The 13th and 14th as we have said are the same as the 8th and 9th except that they were filed on equitable grounds.

The plaintiff moved to strike out the 1st and 3rd pleas, and this motion was correctly overruled. The plaintiff then joined issue on the 1st and 3rd pleas, demurred to the 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 12th 13th and 14th, and demanded a bill of particulars as to the 10th plea and replied to the 11th plea that the bond was not obtained by fraud. The demurrer was sustained as to the 2nd, 4th, 5th, 7th, 9th, 12th, 13th and 14th pleas, and was overruled as to the 6th and 8th. The defendant failed to furnish a bill of particulars as to the 10th plea, and it was thus eliminated, and the defendant did not plead over as to any pleas to which the demurrer was sustained: The plaintiff replied to the sixth plea that the contract was not materially altered so as to release the defendant from liability on the bond, and replied to the eighth plea that it did not agree to supply the Southern Company with money to perform the contract nor to finance any of its requirements, and denied all the other allegations of that plea relating to said architects. Subsequently, by leave of Court, the Aetna Company filed two additional pleas; the substance of the first was that the Southern Company did abandon the contract, by reason of which the Aetna Company acquired the right to sub-let or complete the contract, and the plaintiff wrongfully entered upon and completed the contract and thereby deprived the Aetna Company of said right and privilege.

The second additional plea set up the same defence as the first, but set out in full the conditions 2 and 3 recited in the bond under which said right and privilege was claimed, and then alleged as in the first additional plea the facts which

it claimed operated to defeat its right and privilege. The plaintiff demurred to these two additional pleas, and the demurrers· were sustained. The case thus went to the jury, as to the Aetna Company, upon the issues raised by the first, third, sixth, eighth and eleventh pleas, viz, *nul tiel* corporation; *non est factum* as to the bond sued on; material alteration of the contract, releasing the Aetna Company from liability on the bond; the question of agreement by plaintiff to finance all requirements of the Southern Company under the contract, and the fraudulent breach ·of such agreement; and the obtaining of the bond by fraud.

The second and seventh pleas of the Aetna· Company were clearly demurrable because they both stated merely conclusions or matter of law. Code, Art. 75, sec. 2. *Gent* v. *Cole,* 38 Md. 110. For the same reason it is at least open to question whether the sixth plea was not also demurrable, though the trial Court held otherwise, and that question is not before us. The other original pleas of the Aetna Company were founded upon the architects' certificate, but as this certificate was excluded by the Court, this appellant in its brief very properly concedes, that any error in ruling upon those pleas would not constitute reversible error. The record does not disclose the ground upon which this certificate was excluded, but there is an intimation in one of the briefs that it was because the certificate showed upon its face that the auditing was made *merely* upon the checks and vouchers of expense produced by the plaintiff, *and not upon a personal examination and inspection* of the work done in the completion of the contract. We think that is the inference which must be drawn from the language of the certificate, and as it is clearly the professional skill and personal judgment of the architects as to the character and quality of the work done by the plaintiff, to which the parties are entitled under the contract, we are of opinion the certificate was correctly excluded.

The Aetna Company earnestly contends, however, that the declaration is defective in failing to allege specifically that

the notice of default required by condition two of the bond was given, and that a proper opportunity thereafter was given the Aetna Company to sublet or complete the contract. It contends that these were conditions precedent, which must be alleged in the declaration, as well as proved, in order to maintain the action. Whether the conditions or covenants of a contract are precedent or independent has been a fruitful subject of discussion, but we think *Mr. Poe* has succinctly stated the principle applicable to this case in sec. 565 of his work on *Pleading,* 3rd Ed., in which he says: "When a right of action is once vested, any circumstance the omission of which goes to defeat it, whether called by the name of a proviso, by way of defeasance, or a condition subsequent, must in its nature be a mattter of defence, and need not be stated in the declaration." For reasons which will be hereafter stated, we think it will appear that the Southern Company abandoned the contract, whereby a right of action was at once vested in the plaintiff. Damage, in greater or less degree, even if only nominal damage, was the natural and necessary consequence of such abandonment, and this damage would not be satisfied by the mere subletting or completion of the contract by the Aetna Company. Hence the deprivation of the right to sublet or complete the contract, even if established, would go only in reduction of damages to such extent as the proof would warrant, and must necessarily be a matter of defence only. The demurrer to the two additional pleas was therefore properly overruled.

The Southern Company filed *twelve* pleas, misnumbering the last three as the eleventh, twelfth and thirteenth. Issue was joined on the fourth plea, which was *non est factum,* and all the others were demurred to. The demurrer was overruled as to the sixth, seventh and thirteenth and sustained as to all the others. The sixth plea set up an agreement to finance the contract for the Southern; the seventh charged that the plaintiff failed to pay the Southern Company certain sums as stipulated in the contract; and the

thirteenth, as a plea on equitable grounds, charged that the plaintiff, with the fraudulent and malicious purpose of ruining the Southern Company financially, and making it impossible to comply with said contract, wrote and sent to certain creditors of the Southern Company a letter set out in said plea.   The plaintiff then traversed the sixth, seventh and thirteenth pleas and issue was joined thereon.   The first, second, third, ninth, and twelfth pleas all related to the architects' certificate, and as this was not admitted when offered in evidence, no injury could result from sustaining the demurrer to these pleas.   The fifth plea merely charged that the plaintiff violated the terms of the contract, without stating any fact "to inform the Court, whose duty it is to declare the law arising upon the facts, and to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it."   *Gent* v. *Cole, supra.*   The eighth plea is identical in substance with the thirteenth, which was filed on equitable grounds, and the full benefit of that plea was obtained in the issue joined on the thirteenth.   The eleventh plea is the same as the Aetna Company's thirteenth plea on equitable grounds, and what we have said as to the Aetna's thirteenth plea applies to the Southern's eleventh plea.

We are thus brought to the end of these voluminous pleadings.

Twenty exceptions were taken to rulings upon the evidence, and one to the ruling on the prayers.

The first and second exceptions raise the most important question in the case.   The architect's certificate having been excluded, the Court permitted the plaintiff in the first exception to show by the witness Beaumont, who was plaintiff's superintendent in Baltimore at the time this work was being done, that all the work done in completing this contract was necessary for the purpose and that the prices paid for labor and material were the prevailing market prices; and in the second exception the plaintiff was permitted to show by the witness Simonson, an architect of conceded experi-

ence and qualification as an expert, what was the reasona-
ble cost of completing this contract after suspension by the
Southern Company. The objection to this evidence was that
in the absence of the architects' certificate recovery must be
limited to nominal damages. But we think this evidence
was properly admitted. We have already said that we are
of opinion the evidence shows that the Southern Company
abandoned the contract, thus bringing this case within the
decision in *Smith* v. *Jewell,* 104 Md. 269. The total sus-
pension of work under this contract, and the consent to the
appointment of a receiver, thus voluntarily putting it out
of its power to continue, is, in law and in fact, an abandon-
ment of the contract, carrying with it all the legal conse-
quences of abandonment, chief among which is the opening
of the door to the ordinary rules of evidence in estimating
the damages for breach of the contract. But there is an-
other and equally satisfactory reason for the admission of
such testimony in this case. All the cases agree that where
the failure to produce an architect's certificate is due to
fraud or bad faith on the part of the architect, the rule re-
quiring such certificate must give way. The evidence is
undisputed in the present case that the architects, though
requested and urged to give a certificate *prepared by the
plaintiff's counsel,* refused to give any other form than that
which the Court properly excluded. We are not to be un-
derstood as charging these architects with *actual* fraud, or
with any fraudulent purpose, but it was their duty to make
such a personal examination of the work done in completing
the contract as would have enabled them to give a proper
certificate such as would have been admitted in evidence,
and when they neglected that duty, it operated as injurious-
ly upon the rights of the plaintiff as an absolute refusal in
bad faith to give any certificate whatever.

Both defendants in this case had alleged—the Aetna by
its eighth plea, and the Southern by its sixth plea—that the
architects were incapable of fairly and justly estimating
these damages, and they cught not to be allowed, while seek-

ing to exclude such estimate, to exclude also any other mode
of proof.

The third, seventh, eighth, ninth, tenth, eleventh, twelfth,
sixteenth, seventeenth, eighteenth, nineteenth and twentieth
exceptions were all taken to rulings which excluded parol tes-
timony offered to vary the written agreement between the
parties, and we can discover no error in any of these rulings.
In each of these instances, the effort of the defendants was to
introduce evidence as to an alleged verbal agreement ante-
cedent to the written agreement, but differing from it. The
fourth, fifth and sixth exceptions may be considered together.
These all sought to introduce alleged statements made by
Witherspoon, plaintiff's manager, as to the responsibility of
other bidders for this contract, with a view to show that these
alleged representations influenced the Aetna Company in exe-
cuting the bond. If this were an action of deceit by the Aetna
Company against the plaintiff, proof that such statements
were made, followed by proof of the falsity of those state-
ments, and that the Aetna Company had a right to rely upon
them, a different situation would be presented. But in this
case the matter inquired into was wholly irrelevant.

The thirteenth exception was taken to the refusal to allow
the witness Purnell to say why the plaintiff did not pay the
Southern's pay roll of August 25th, presented after the work
had been stopped. The question was not whether any rea-
son for not paying this pay roll had been given by plaintiff,
but simply why it had not paid it. If the object had been to
elicit a statement of plaintiff against its interest, or to lay
before the jury any reason put forward by the plaintiff, it
would have been a proper question; but to have allowed the
question as framed would have been to permit the witness to
give his mere opinion of the reason which governed the
plaintiff in refusing to make that payment.

The fourteenth and fifteenth exceptions relate to the letter
written by the plaintiff on August 18th, and mailed to a num-
ber of the creditors of the Southern Company, informing
them that under the contract they could only pay a certain

percentage of the total amount of the contract price, and that they, therefore, would not guarantee payment for labor or material after that date. That letter was set out in the thirteenth plea of the Southern Company, and the plea alleged that it was written and sent with the malicious and fraudulent purpose to make it impossible for that defendant to comply with the contract and issue was joined upon that plea. The evidence shows that at that time the plaintiff had advanced and paid nearly $60,000 on the contract of $68,000, while only about 55 to 60 per cent. of the work had been done. Unless the plaintiff was bound by the terms of its contract to furnish the Southern Company with *all* the money necessary to complete the contract *at such times* as it should demand, it had the right to protect itself by such a notice to the creditors of the Southern. Because it had seen fit to make advances not required by the contract so long as it felt safe in doing so, is no reason why it should continue to do so, when it was clear to any prudent person that the danger point had been reached. If they had not ceased those payments, they would in a few days have trenched upon the reserve which under the contract they were bound to maintain for the protection of the Aetna Company, in which event that company would have had a good cause of complaint and defence in this action to that extent.

In the fourteenth and fifteenth exceptions the defendants sought to show as a matter of defence that they were unable after these letters were sent out to purchase materials from the parties to whom they were sent, but if the plaintiff had complied with the terms of its contract as to payments, it was wholly immaterial to any issue in this case what effect their refusal to *do more than their contract required* had upon the ability of the Southern Company to perform *its part of the contract.*

There was no error in these rulings.

The Court granted four prayers of the plaintiff, viz, the first, second, sixth and eighth, amending the first, second and eighth before granting, and we shall request the Reporter

to set these out in full. We approve the propositions of law embraced in these instructions, as in conformity with the views we have expressed herein in dealing with the questions of pleading and the exceptions to the rulings upon the evidence.

The plaintiff's first prayer requires the jury to find that the plaintiff had fully performed its part of the contract up to the time work was stopped; that the Southern Company abandoned the contract, and the plaintiff thereupon completed the same; and instructed the jury that upon such finding their verdict must be for the plaintiff, unless they should also find that the execution of the bond was procured by the fraud or misrepresentations of the plaintiff.

The plaintiff's second prayer as to the measure of damages correctly states the law, and is practically in accord with the defendants' contention, as set forth in its fourteenth granted prayer dealing with the measure of damages in event of recovery. There was not a particle of evidence of any malicious or fraudulent purpose to destroy the credit of the Southern Company, or to prevent its execution of the contract, either in writing and sending the letter of August 18th, set out in the Southern's thirteenth plea, or in any other act or word of the plaintiff, and it was therefore proper to instruct the jury in the plaintiff's sixth prayer that upon that issue their verdict must be for the plaintiff as against the Southern Company.

What we have said as to the alleged representations of Witherspoon to Hunter, in referring to the fourteenth and fifteenth exceptions is applicable to the plaintiff's eighth prayer, which was properly granted.

The Southern Company offered three prayers, all of which were refused. They were all predicated upon the exclusion of the architects' certificate, and the contention that there could be no recovery upon any other evidence. It follows from what we have already said that these prayers were properly refused.

The Aetna Company offered eighteen prayers, of which the Court granted the twelfth, thirteenth and fourteenth, as offered, and modified the second and sixteenth, and granted them as modified. We shall request the Reporter to set out the defendant's granted prayers also.

The second prayer, as amended by the Court, correctly interpreted the thirteenth clause of the contract as to the obligation to make payments in instalments as the work progressed, and was correctly modified by adding that such failure, even if found by the jury, would not prevent a recovery by the plaintiff.

The twelfth prayer limited the recovery in any event to the "lowest reasonable cost of completing the contract." This prayer would not have been objectionable if it had omitted the word "lowest" and had declared "the reasonable cost" to be the standard for the jury.

The thirteenth prayer was liberal to the defendants in refusing to allow the recovery of any penalty for delay under the fourteenth clause of the contract.

The fourteenth prayer, as we have said, in referring to the plaintiff's second prayer, correctly states the credit to be allowed on any damages awarded by the jury.

The sixteenth prayer of the Aetna Company was correctly amended by the Court so as to *permit,* instead of *requiring,* the verdict to be for the defendant, but was liberal in the extereme to the Aetna Company in leaving to the jury to find that the alleged representations of Witherspoon to Hunter as to the receipt of other bids, within $2,000 of the Southern's bid, were untrue. That was the pith of the prayer. There is a presumption of truth always, which should be overcome either by positive evidence of falsity, or by suspicious circumstances so strong as to warrant a reasonable mind in believing that there was falsity, and we have not discovered any evidence of that character in the record.

It is not necessary to prolong this opinion by any detailed examination of the Aetna's rejected prayers.

The first, third, fourth, fifth and eighth prayers are based on the absence of the architects' certificate and the contention that no other character of evidence was admissible to prove the damages. The sixth, seventh, ninth and fifteenth prayers attempt to procure instructions based upon the excluded evidence offered to prove a verbal contract antecedent to and contradictory of the written agreement. These prayers were skillfully drawn so as to confuse the payments stipulated for in the written agreement with the alleged verbal undertaking to finance the contract by making advances at the demand of the Southern. The defendants received all to which they were entitled upon that score in the proviso of the plaintiff's first prayer, which instructed the jury they could not find for the plaintiff if they found the bond was procured by the fraud or misrepresentations of the plaintiff.

The tenth prayer submits to the jury to find whether the plaintiff afforded the Aetna Company a reasonable time to elect whether it would sublet or complete the contract, and was defective for that reason. No time being mentioned in the contract for that purpose, the question of reasonable time is one of law for the Court upon the facts, and the evidence does not show there was a denial of reasonable time. *Wheeler* v. *Harrison,* 94 Md. 147. The Aetna was notified of the default on the very day it occurred, August 23rd, by registered mail, and by repeated subsequent letters, and was finally, on September 1st, given till September 4th, "to go ahead or sublet the contract." This was nearly two weeks, an amply reasonable time in our opinion to make its election.

The eleventh prayer is apparently in conflict with the Aetna's fourteenth granted prayer, and was properly rejected for that reason, if no other.

The seventeenth and eighteenth prayers were properly rejected as in conflict with plaintiff's eighth prayer, by which the jury were instructed that the representations mentioned in that prayer, being the same mentioned in the Aetna's seventeenth and eighteenth prayers, were not such representations, even if made, as constitute a defense to this action.

Being of opinion that the whole case was fairly presented upon the granted prayers, the judgment will be affirmed.

*Judgment affirmed, with costs to the appel-
lee above and below.* ·

A motion for a re-argument was made, and, in disposing of the same,

PEARCE, J., delivered the opinion of the Court.

A motion for re-argument has been filed in this case accompanied by an elaborate brief in support of the motion, and careful consideration has been given it by each of the Judges who sat in the case, without however convincing the Court of any error in the views expressed in the opinion heretofore filed.

The reasons for adherence to these views will be briefly stated.

The eleventh plea of the Aetna Indemnity Company alleged that the bond sued on "was obtained by the fraud and misrepresentation of the plaintiff," and the chief burden of complaint in the brief for re-argument relates to the action of the Court upon the issue raised by the traverse of that plea. The Indemnity Company attempted to show three alleged misrepresentations made by Witherspoon, the agent of the plaintiff, prior to the giving of the bond, to induce the Indemnity Company to become surety for it. These are thus stated in the brief for re-argument:

"(*a*) That the Fuller Company would finance the whole work; (*b*) That there would, therefore, be no financial risk to the surety; (*c*) That bids of three other responsible bidders had been submitted, which were within $2,000 of the contract price agreed on between the plaintiff and the principal upon the bond, the successful bidder, the Southern Construction Company."

The brief concedes that the first two representations, ('*a*' and '*b*') having been ruled out of the case by the granting of

the plaintiff's eighth prayer, by which the jury was instructed that "they were not such representations, even if made, as constitute a defence to this action," and this ruling having been sustained on appeal, that they need not be further considered.

The evidence offered and admitted, as to the bids, was as follows: Hunter, the Aetna's general agent, testified that "Witherspoon told him there were four companies who bid on this job, and their bids were within $2,000 of each other, and the Southern Construction Company was one of those bidders, or their bid was one of them." He was then asked: "How about the responsibility of the other bidders?" and the Court sustained an objection remarking that it was leading. He was then further asked: "Did Witherspoon make any statement to you as to the responsibility of the other bidders?" and an objection to this was also sustained. Hunter also testified: "I do not recall any other representation at that time."

Purnell, treasurer of the Southern Construction Company, testified: "Witherspoon told Hunter, Ward and myself that there were four bids within $2,000 of each other on the work on the Friedenwald Building, including the Southern Construction Company's." *He was not asked whether any statement was made as to the responsibility of these bidders.* Ward, President of the Southern Construction Company, testified: "There were several other bids than that of the Southern for the work covered by its contract. *There were the Baltimore Ferro Concrete Company, the Filbert Paving Company, and several others whose names I cannot remember.* These bids were received by the Fuller Company, and I had no way of seeing them, but was told by Mr. Witherspoon that the figures were lower than mine and those of my company."

*This witness was not asked whether there was any representation as to the responsibility of the other bidders.*

At no time until after the above testimony for defendant was given, were these alleged representations mentioned by

the Aetna's counsel in Witherspoon's examination. But at the close of the testimony for defendant, Witherspoon was called in rebuttal and denied that he made any of the representations testified to by Hunter prior to the execution of the bond in suit. Purnell was recalled in surrebuttal, and said that Witherspoon did make them to Hunter in the presence of Ward and himself. If Witherspoon's denial that he made any of the representations alleged by Hunter was true, it went to. the very root of the defence of fraud in procuring the bond. But even if he had made the representations so testified to, that, *alone,* would neither prove, nor tend to prove, fraud inducing the Aetna Company to execute the bond in suit. To constitute a defence on that ground, it was necessary to show either, (1), that no bids from other parties were received; or (2) that if such were received, they were not within $2,000 of each other; or (3) that if received, and within $2,000 of each other, that Witherspoon represented these bidders to be financially responsible, when he knew they were not, or had no knowledge whatever upon that point. There was not a particle of proof upon any one of the three matters above mentioned, nor even *an offer to follow up* the testimony of Hunter, Purnell and Ward as to the making by Witherspoon of the representation that such bids had been received, by proof of any one of the three matters above. If the representations they allege to have been made were not made, the defence of fraud falls to the ground, and if made. the defence equally falls, in the absence of clear proof that they were false in fact. In the absence of such proof the representations that there were such bidders had no probative force under the plea in question, and had no legal relevancy to that issue.

It must not be forgotten that these alleged representations were made to Hunter in the presence of Ward and Purnell; that Hunter said he could not say whether Witherspoon gave him the names of any other bidders, though he may have done so; nor that Ward said he named the Baltimore Ferro Concrete Company, the Filbert Paving Company and sev-

eral others whose names he could not then remember. The Aetna Company could thus have informed itself, before the execution of the bond, whether the parties so named were bidders, and at what figures, and could have taken the usual and ordinary means of ascertaining their financial responsibility. Whether it did so, does not appear, but it does appear that its counsel failed to call any of these parties as witnesses to prove the charge of fraud, and this failure is deeply significant that if called they could not have sustained the charge. It must be observed also that Witherspoon nowhere was asked what other bids he received, but merely whether he made the statements testified to by Hunter, and his denial of these statements throws no light upon the question, not raised anywhere in the record, as to whether any other bids were in fact received. If he had, in rebuttal, attempted to prove that other bids were received, it is at least questionable whether he could have done so, and he was certainly not called on to deny what had not been testified to for the defendant. Hence the reference in the brief for reargument to the case of *Hiss* v. *Weik,* 78 Md. 439, is not in point. Witherspoon could not be expected in testifying for plaintiff, either in chief or on cross-examination, to anticipate the testimony of Hunter, Purnell and Ward, nor in rebuttal to go beyond the subject-matter of rebuttal. If any unfavorable inference is to be drawn from the non-production of pertinent evidence in this case, it could be most properly drawn against the Aetna Company for its failure to call the parties whose evidence as to their bids would have been the best obtainable, and by whom, if the alleged representations were false, their falsity could have been clearly proved. What was said in the opinion heretofore filed, as to the situation if this were an action of deceit, might have been omitted without affecting in any way the correctness of the ruling on the fourth, fifth and sixth exceptions, or on the instructions. Without proof that the alleged representations were false, the mere fact that they were made is without any probative force upon that issue, or any other issue in the case, and the

testimony there excluded was therefore properly character-
ized as irrelevant to the issues.

We can perceive no conflict between the present case and
the cases cited in the brief. *Casualty Co.* v. *Gehrman,* 96
Md. 634; *Bankers Life Ins. Co.* v. *Miller,* 100 Md. 1; *Dula-
ney* v. *Fidelity Co.,* 106 Md. 17; *Mutual Life Ins. Co.* v.
*Mullan,* 107 Md. 457, and *Same* v. *Rain,* 108 Md. 353.

In all those cases there was proof offered and admitted of
the falsity of material representations relied on as inducing
the contract. Here there was none offered.

Turning to the instructions commented on in the brief,
being the plaintiff's first prayer and the Aetna's sixteenth
prayer as modified by the Court, no ground for reversal can
be found in either. Both gave the Aetna Company more
than it was entitled to, because both allowed the jury to find
for the defendant, the Aetna Company, if the alleged repre-
sentations were untrue, when, as we have shown, there was
no evidence offered of their untruth.

If the plaintiff had offered a prayer that there was no evi-
dence legally sufficient to support the allegations of the Aet-
na's eleventh plea, and that their verdict therefore, upon the
issues raised on that plea, should be for the plaintiff as
against the Aetna Company, that issue might well have been
thus disposed of.

Regarding the question of reasonable time for the Aetna
to act, the record shows that on August 23rd the plaintiff, by
letter, notified the Aetna Company that a bill had been filed
by a Fireproofing Company against the Construction Com-
pany, alleging its insolvency and asking for a receiver. On
August 24th plaintiff wrote the Aetna Company that the
Southern had stopped work on the contract and that plaintiff
was informed the Southern would consent to a receivership
and be wound up. On August 29th plaintiff again wrote,
stating a receiver had been appointed and that the Southern
had answered consenting thereto and admitting its insol-
vency; that no reply had been received to any of these letters,
and that it was imperative for the protection of the interests

of the Aetna that some action be taken at once. On September 1st plaintiff again wrote, stating no reply had yet been received to any of these letters; that plaintiff assumed from this silence that the Aetna did not deem it to their advantage to perform the contract or sublet, and that in order to keep the damages down as low as possible the plaintiff would, on Tuesday, September 4th, get to work, holding them responsible on the bond. If the last letter had never been written, we are of opinion that reasonable notice had been given for the Aetna to act.

There was evidence that Monday, September 3rd, was Labor Day, but there was no evidence that there was no delivery of letters in New York either on Sunday or on Labor Day, as is assumed in the brief. To the contrary, it is common knowledge that in all cities and large towns the Post-office is open for general delivery at certain stated hours on Sundays, and that there is one delivery by carriers on holidays. Neither is there any evidence, as is also assumed in the brief, that the Aetna's office would not be open on Labor Day *for the receipt of mail matter,* or that no Sunday call would be made at the Postoffice for that purpose, and it may well be regarded as surprising that a corporation engaged in so large and hazardous a business should make no such provision, especially in view of the repeated warnings from plaintiff in the letters of August 23rd, 24th and 29th of the necessity of prompt action for the protection of their own interests as sureties on the bond.

In conclusion, we are of opinion that no injustice has been done in the disposition of this case and that a re-argument was properly denied.